No. 24.—JOHN DOE, *ex dem.* of JESSE LINSEY, and others, plaintiff in error, *vs.* RICHARD ROE, cas. ejector, and ALEXANDER RAMSEY, tenant in possession, defendant in error.

[1.] In ejectment, if the lessor of the plaintiff has made a warranty of the land to the tenant, or to those under whom the tenant claims, the tenant may use the warranty, not to estop such lessor, but, to "rebut and barre him" of the action.

[2.] The counsel on the plaintiff's side opens his case to the jury, but does not read any law; the counsel for the defendant replies, and during his reply, is handed a decision, as law for the plaintiff, by the counsel for the plaintiff, and he comments on the decision.

*Held*, That the counsel for plaintiff, in the conclusion, has also the right to comment on the decision.

Ejectment, from Sumter. Tried before Judge ALLEN, at March Term, 1857.

This was ejectment brought by John Doe, on the several demises of Jesse Linsey, Josiah H. Carter, Adam Pitner, John R. Cochran and William O. Beall, against Richard Roe, casual ejector, and Alexander Ramsey, tenant in possession, for the recovery of lot of Land No. 161, in the 27th district of originally Lee now Sumter county, and for mesne profits.

Plaintiff offered and read in evidence an original grant from the State to Jesse Linsey, dated 12th December, 1832, proved the *locus* and Ramsey's possession at the commencement of the action, and until the fall of 1855.

Plaintiff further offered to prove, under the count for *mesne profits*, that there was a steam saw mill on the premises, and the value of the trees cut down, sawed up and sold. To the introduction of this testimony, defendant's counsel objected. The Court sustained the objection, and plaintiff's counsel excepted.

Here plaintiff closed.

Defendant, under a notice, drew from plaintiffs a deed made by Jesse Linsey, to Josiah H. Carter, for the premises in dispute, dated 28th December, 1832. Also, a deed from Carter to Adam Pitner, for the same premises, dated 17th January, 1840. These deeds were read as evidence; were in the usual form, and contained the usual covenants of warranty.

Defendant next read in evidence an original deed from Pitner to Benjamin B. Smith, dated 17th July, 1833, for the the premises in dispute, and recorded 12th May, 1835, which contains the following covenant of warranty, viz:

" To have and to hold said tract of land and bargained premises unto him the said Benjamin B. Smith, his heirs and assigns, in fee simple; and I, the said Adam Pitner, will warrant and forever defend the right and title of said land

unto the said Benj. B. Smith, his heirs and assigns against the claim or claims of all persons whomsoever."

Defendant then read in evidence, a deed from Smith to Robert J. and Henry K. McCoy, dated 2d July, 1850.

Here defendant rested.

Plaintiff in reply, tendered in evidence and read a copy of a power of attorney from Jesse Linsey to William Hallam, dated 5th October, 1827, as follows, viz:

*Know all men by these presents*, That I, Jesse Linsey of the county of Habersham, State of Georgia, for divers good causes and considerations, me hereunto moving, do, by these presents, nominate and appoint William Hallam of said county and State, my true and lawful attorney for me, and in my name, to bargain and sell, release, convey and confirm or dispose of in any lawful manner, all that lot or parcel of land known and distinguished by No. 161, in the 27th district of Lee county, which said land I drew in the late Land Lottery: And I do hereby ratify and confirm all and every thing that my said attorney may do, touching the premises, as fully and effectually as if I myself was personally present at the signing and delivery of the same. In witness whereof, I have hereunto set my hand and seal, this fifth day of October, in the year eighteen hundred and twenty-seven.

his

JESSE ⋈ LINSEY, *L. S*

mark.

In presence of

    SAMUEL HUGHES,

    BENJ'N CLEVELAND, *J. I. C.*

Endorsed, "I assign this power over to Adam Pitner, in presence of

WILLIAM HALLAM.

*Attest*—JOHN HOPNER.

This 21st November, 1827."

Recorded 12th May, 1835.

Defendant waived all objection to said power of attorney, except its irrelevancy, which objection the Court sustained, and ruled it out.

To which ruling, plaintiff excepted.

The testimony being closed, counsel went to the jury.

Plaintiff's counsel was called on to state the points upon which he relied for a recovery, which he did, but did not read or refer to any authority. Before defendant's counsel concluded, however, plaintiff's counsel handed to him 15th Ga. Reports, and pointed out the case of *Bivin vs. Lessees of Vinzant*, stating that he should rely on that case. Defendant's counsel took the book; read ·from the case and insisted that that case was distinguishable from the one before the Court.

Plaintiff's counsel in the opening of his argument, proposed to read the case of *Bivins vs. Lessee of Vinzant*, for the better understanding of the decision of the Supreme Court. Defendant's counsel objected, on the ground that he had not read it when stating his points. The Court sustained the objection, and refused to allow plaintiff's counsel to read said decision, remarking that the case had been read before, and the Court was familiar with the points decided: To which ruling and decision, plaintiff excepted.

Plaintiff's counsel then proceeded in his argument to the jury, and remarked that it was unfair for defendant's counsel to read and comment on said decision of the Supreme Court, and then to object and prevent him from doing so.

Counsel for defendant objected to this remark, and moved the Court to stop counsel in such comments; which objection the Court sustained, and arrested plaintiff's counsel in this part of his address; observing that such remarks were personal and improper.

To which remark and ruling, counsel for plaintiff excepted.

The Court charged the jury, that if they believed from the evidence that plaintiff was entitled to recover, the recovery must be on the demise of Pitner; and if they should believe

that Pitner sold the land in dispute before he acquired title to it, and afterwards acquired title, he, Pitner, could not recover, as such after acquired title enured to the benefit of his prior vendee.

To which charge, plaintiff excepted.

Plaintiff's counsel requested the Court to charge the jury, that if a person without title sells land where he is not in possession, and there is an outstanding paramount title in another, the sale is void under the statute, 32. *Henry 8th:* which charge the Court refused to give, on the ground that the case before the Court did not make this principle of law applicable.

To which refusal, plaintiff excepted.

The jury found for the defendant. Whereupon, counsel for plaintiff tenders his bill of exceptions, and therein assigns as error all the rulings, decisions, charges and refusals to charge, above excepted to.

JAMES J. SCARBOROUGH; and JOHN R. COCHRAN, for plaintiff in error.

McCOY & HAWKINS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

This was an action in the name of Doe, on the several demises of Linsey, Carter, Pitner, Cochran and Beall.

On the trial, the plaintiff showed title in Linsey, (by grant,) and there left the title.

The tenant then showed a deed from Linsey to Carter; a deed from Carter to Pitner; a deed from Pitner to Smith; and a deed from Smith to the two McCoys. And then the tenant closed his evidence. There was no further or other evidence as to the title.

The deed from Pitner to Smith was made before the deed from Carter to Pitner was made; and consequently, *before Pitner had any title.*

This being the evidence, any recovery that could have happened in the case, would have had to be a recovery on the demise of Pitner; that is, would have had to be, in effect, a recovery *by Pitner.*

In the deed made by Pitner to Smith, there was a warranty of the land to Smith, "his heirs, and assigns." The tenant, (it may be inferred) claimed under persons who were the "assigns" of Smith, viz: the two McCoys.

The recovery then, if there had been one, would have had to be, not only a recovery *by Pitner,* but a recovery by Pitner, *against persons to whom he had made a warranty of the land.*

Such a recovery followed by eviction, (and we may assume, that a recovery in ejectment will be followed by eviction,) would have been evidence, to show Pitner guilty of a breach of his warranty.

By a breach of his warranty, Pitner would have become liable to those very same persons against whom his recovery was, for the sum of money, with interest on it, which he had obtained, in payment for the land, from their assignor, Smith.

This sum, with the interest on it, would have been equivalent, we are bound to presume, (at least, we are so bound, in the absence of proof to the contrary,) to the value of the land, and the value of all the rents that could have entered into the recovery; for this sum, with such interest, would have been the measure of the damages for the breach of the warranty; and the measure of the damages for the breach of a warranty, nothing can be, except something of a value equal to that of the warranted land and the value of the rents lost by the warrantee.

By a recovery then, Pitner would have become liable to the two McCoys, the "assigns" of Smith, for a sum precisely equal in value to the value of what, by the recovery, he would have obtained from them.

These things being so, the question is, did the McCoys have the right to retain the land as against Pitner? In other

words, the question is, did this warranty of Pitner's constitute a defence for the McCoys' against his suit?

And, taking the case as it stood, (it standing without any evidence to show the relation which the value of the land and of the rents on the one hand, bore to the purchase money, and the interest thereon, on the other,) the answer to the question, we think, must be, yes. Such, it seems to us, is the answer which section 446 of Littleton, together with the comment upon it by Coke, requires to be given.

That section is in these words:

" *Also these words which are commonly put in such releases,* scilicit (quæ quo-vismodo in futurum habere potero,) *are as void in law ; for no right passeth by a release, but the right which the releasor had at the time of the release made. For if there be father and sonne, and the father be disseized, and the sonne (living his father) releaseth by his deed to the dissesor all the right which he hath or may have in the same tenements without clause of warrantie, &c. ; and after the father dieth, &c. ; the sonne may lawfully enter upon the possession of the disseisor, for that he had no right to the land in his father's life,* (pur ceo que il n'avoit droit en la terre en la vie son pier) *but the right descended to him after the release made by the death of his father, &c."*

And the comment is in these words: "For if there be a warranty annexed to the release, then the sonne shall be barred. For albeit, the release cannot barre the right for the cause aforesaid, yet the warranty may rebut and barre him and his heirs of a future right, which was not in him at that time: and the reason (which in all cases is to be sought out) wherefore a warrantee being a covenant reall, should barre a future right, is for avoiding of circuitie of action (which is not favored in law); as he that made the warranty should recover the land against the ter-tenant, and he by force of the warrantie to have as much in value against the same person."

Lord Coke's expression is, that the warranty may "*rebut* and *barre* him," &c., not that the warranty may *estop* him. And this is just what we would be understood as saying in this case. Indeed, to say that the thing, *warranty*, is an estoppel upon the warrantor, is to destroy the thing, as *a warranty*, for every estoppel is mutual; if therefore, the warranty estops the warrantor, it equally estops the warrantee; and if it estops the warrantee, the effect must be, to prevent him from alleging any breach of the warranty; and this is to destroy the warranty.

[1.] We think then, that Pitner's warranty was a good defence to the McCoys against the action—the action being, as the *proof stood, his* action.

This opinion is not adverse to anything in *Bivins vs. The Lessee of Vinzant*, (15. *Ga. R.* 521.) The present case is not like that case.

That was a case in which Vinzant made two deeds, one, with warranty, before the grant had issued to him, the other after the grant had issued to him. The suit was by a person claiming under the younger deed, against a person claiming under the older deed. It was by a person, therefore, who was *not a party to the warranty;* and consequently by a person who, by recovering, would not subject himself to any action on the warranty. If the suit had been by Vinzant, the *warrantor* himself, the case would have been like this, and Vinzant, by recovering, would have broken his warranty. In this case, so far as appears, Pitner made but one deed; a deed with warranty, but made it before he himself had acquired title; and after he had acquired title, he himself, in the face of his warranty sued his warrantee for the land.

What is said of Bivins and Vinzant, may be equally said of *Way vs Arnold*, 18. *Ga.* 181.

If, in the present case, the plaintiff had shown a deed from Pitner to *Cochran*, the case would have been more like those two cases, but he did not do that. He did not offer to show title in any of his lessors below Pitner, or, indeed below Lin--

sey, the title having been carried down into Pitner by the opposite party.

Assuming, then, the correctness of our opinion, that Pitner's warranty was a good defence to the McCoys, against the action in the form in which the proof stood, the question is, whether, of the charge of the Court, so much was right, as consists in these words: "And if they should believe, that Pitner sold the land in dispute before he acquired title to it, and afterwards acquired title, he, Pitner, could not recover on such *after* acquired title, but that such title enured to the benefit of his prior vendee."

These words, we take it, were intended to amount to this; that if Pitner made the deed to Smith, Pitner could not recover, for the reason, that his after acquired title *enured to the benefit of Smith:* if so, we think the proposition they lay down is true, but for a different reason, viz: for the reason, that Pitner's deed to Smith contained *a warranty.*

Whilst then we may say that we approve the Court's proposition, that Pitner's " after acquired title enured to the benefit of his prior vendee," we are not prepared to say, that we approve the reason on which the Court founds the proposition.

This being the view which we take of the charge, it is unnecessary to express any opinion on the rejection of the evidence offered in the Court for *mesne profits.* I have no doubt myself that the evidence was admissible. See *Cunningham vs. Morris*, 19. *Ga. R.* 583.

Was the rejection of the power of attorney made by Linsey to Hallam, proper?

There were entries on the power of attorney to Hallam to show it one that had been assigned by Hallam to Pitner; and one the recording of which was on the same day on which was recorded the deed from Pitner to Smith.

These are facts suggestive of the existence of the further fact, viz: That Pitner, in making that deed, intended to act, not as principal, but as an agent—as the agent of Linsey;

and that Smith, in accepting the deed intended to accept it as a deed made by Pitner, not as a principal, but as an agent, as this very agent of Linsey. These facts are such as are *suggestive* of this further fact. But still, they are not sufficient by themselves to *prove* that fact, in the face of this other fact, that the deed itself is in the mere name of Pitner, and takes no notice of the power of attorney; especially, as, in law, the power of attorney, was not assignable.

Therefore, we do not think that the rejection of the power of attorney, even if wrong, is a matter to require us to grant a new trial.

But we do not say that we think that the rejection of the power of attorney *was* wrong. As to that, we express no opinion.

The counsel for the defendant in error commented, before the jury, upon the case handed to him by the counsel for the plaintiff in error. After doing that, it certainly did not lie in his mouth to say, that the counsel for the plaintiff in error should not also comment, before the jury, upon the case.

[2.] We think therefore, that the Court should have allowed the counsel for the plaintiff in error so to comment.

But still, we do not think this an error that entitles the plaintiff to a new trial, because we think that it was not in the power of comment, on that case, to show that the plaintiff was entitled to a verdict.

As to the only remaining point: the Court's stopping the plaintiff's counsel from proceeding in his charges of unfairness made against the defendant's counsel, we cannot say, that we see anything wrong; such charges could have nothing to do with the issue; and therefore any effect at all which they might have had, would, of necessity, have been an improper effect.

Upon the whole, we have to affirm the result of the decisions of the Court below.

Judgment affirmed.