MARY GOODSON, plaintiff in error, vs. JOHN BEACHAM, defendant in error.

[1.] B. had the title to a lot of land.   The *interest* of G. in the lot, was levied on.   At the sale, B. gave notice of his title, but was a bidder for the lot, which was knocked off to a third person.

*Held,* That B. was not estopped from asserting his title to the lot, against the latter.

[2.] A. having no title, sold to B. and conveyed with warranty.   Afterwards, A. acquired the title.   In a suit by B. for the land against a third person, *held,* that on A's acquiring the title, a *perfect equity* vested in B. which entitled him to recover the land.

Action to recover land, from Lee.   Tried before Judge AL-LEN, April, 1857.

This was an action brought under the form prescribed by Act of 1847, by John Beacham, against Mary Goodson and Ananias Newsom, to recover lot of land No. 101, situated in the 16th district of Lee county, and for mesne profits.   At the trial, plaintiff dismissed as to Newsom, and proceeded against Mary Goodson alone.

Goodson vs. Beacham.

Plaintiff offered in evidence:

1st. A grant of the lot in controversy to Ans. Kimberly, da-ted 29th May, 1829.

2d. Depositions of William Y. Hansell.

3d. A deed from W. C. Street to Samuel M. Street and Charles A. Pringle, for one-third of the lot, dated 12th May, 1848, recorded 16th June, 1855.

4th. A deed from William Mims to plaintiff, dated 8 April, 1850, recorded 18 Feb., 1851.

5th. A deed from Sam. M. Street and Charles A. Pringle to William Mims, dated 5 Feb., 1851.

6th. *Griffin Smith,* who swore that Thomas Goodson went into possession of the lot in 1847, and cleared some four or five acres, worth two dollars per acre rent. Since the sale by the Sheriff, Mary Goodson claimed it.

7th. *Washington Knight,* who swore that he understood they were in possession; that old man Goodson cleared the land and lived on adjoining lot, and Mary Goodson live with him; he only knew the number of the land by hearing, and did not know that Mary Goodson ever was in possession of the land, or received any of the rents and profits.

### Evidence for Defendant :

1st. A written notice by Alfred Keney constable, dated 20th Nov., 1850, directed to Thomas Goodson, of a levy made on lot No. 101.

2d. The Sheriff's deed, dated 24 February, 1851, reciting a sale on the first Tuesday in January, 1841, by virtue of a *fi. fa.* in favor of John J. Hudson, against Thomas Goodson.

3d. The deposition of John Layton.

Plaintiff in reply proved that he was at the Sheriff's sale, and said to persons present, that he had the only paper title to the land, and that whoever bought would buy a law suit. Also, that Willis A. Hawkins, Esq. stated the same thing, that Thomas Goodson's *interest* in the land was levied on and sold.

*In rebuttal by defendant.*

That Hawkins attended the sale at the instance of Mims ; that only Goodson's interest was sold, and the crowd at the sale was so satisfied ; the object was to get a squatter off the land.

The jury under the charge of the Court, found for the plaintiff the land in dispute and forty-eight dollars mesne profits.

Defendant moved for a new trial on the following grounds :

1st. Because the Court erred in refusing to charge the jury as requested by defendant, that if they believed from the evidence that at the time of the sale by the Sheriff, the plaintiff was present and bid for the land under a statement made by W. A. Hawkins, Esq., that the land was sold to confirm title, then the plaintiff could not dispute the title of the purchaser at Sheriff's sale.

2d. Because the Court erred in refusing to charge, that if plaintiff and Mims combined to sell the land to get Goodson, defendant in *fi. fa.*, out of possession, and sold the land and plaintiff bid for it, the purchaser got a good title as against Mims and plaintiff.

3d. Because the Court erred in refusing to charge, that if the deed from Mims to plaintiff was made before he had title himself the plaintiff got no title.

4th. Because the Court erred in charging, that if Mims made a deed to Beacham, having no title, and afterwards got title, this title accrued to the benefit of Beacham's title.

5th. Because the jury found contrary to the evidence and law.

6th. Because the jury found contrary to the charge of the Court, in this, that the Court charged, that if Mary Goodson was in possession under Sheriff's title and paper title adversely, on the date of the deed to Mims, then the deed from Mims to plaintiff was void, and he could not recover.

The Court refused to grant a new trial, and defendant by his counsel excepted.

WARREN & WARREN; and STROZIER, for plaintiffs in error.

LYON & IRWIN; and HAWKINS, *contra.*

*By the Court.*—BENNING, J. delivering the opinion.

The Court refused to grant the motion for a new trial. Was that right?

The first ground of the motion, is of no validity.

Hawkins's statement was this: "That he instructed the Sheriff to sell only the *interest* of Goodson, and so notified the crowd."

This is a quite different thing, from " a statement that the *land* was sold," &c.

And the evidence is not such, as to make it clear beyond a reasonable doubt, that Hawkins had authority from Beacham, to make even this statement, or, authority to act for Beacham in any way.

Then, the constable proves, that he levied on the " interest" of Goodson in the land; and he, and others prove, that Beacham gave public notice of his title, at the sale.

[1.] Mary Goodson bought, then, with *notice* of Beacham's title. She cannot complain if Beacham asserts his title against her. There is no fraud. What if he did bid at the sale? Did that hurt her?

The request, then, referred to in this ground, was authorized neither by the fact nor the law.

The second ground does not differ materially, from this first ground.

The third and fourth grounds may be considered together.

Mims, when he made the deed to Beacham, had no title; but his deed was an attempt to convey the fee, and it was a deed with a warranty.

This shows, first, that it was the *intention*, that the *land*,

Goodson vs. Beacham.

the *whole* interest in the land, should be conveyed to Beacham ; secondly, that Beacham had paid the purchase money.

Such being the intention, the consequence would be, that if Mims should afterwards acquire the title, he would be bound to convey it to Beacham, as much so, as if the contract were one standing in the form of a bond for titles.

Perhaps, this would be the consequence, even without the warranty. *Taylor vs. Debar*, 2 *Cas. in Ch.* 212 ; 1 *do.* 270 ; *Wright vs. Wright,* 1 *Ves. Sen.,* 409 ; *Noel vs. Bewley*, 3 *Sim.* 103 ; *Smith vs. Baker*, 1 *Young & Call. ch.* 223 ; *Jones vs. Kearney*, 1 *Drury & Walsh*, 159 ; *Cited in note* 2 *Rawle Cov.* 438 ; *Sug. Ven. ch.* 8, *sec.* 2, *p.* 33 ; *Rawle Cov.* 448.

[2.] But if the case were so, that the contract was in the form of a bond for titles, then, as the purchase money was paid, the contract would give Beacham a *complete equity* in the land, the moment the title came into Mims, and a complete equity according to *Pitts & Bullard*, 3 *Kelly*, would be equivalent to the legal title, so far as to enable Beacham recover, or defend, in ejectment.

The contracts being in the form of a warranty, does not make the case materially different.

In this way, then, as the Court said, it *is* true, that the title, when acquired by Mims, " enured" to the benefit of Beacham ; and *not* true, that, though the deed was made by Mims before he had title himself, " Beacham got no title to the land by his deed."

There is nothing then, in these two grounds, the third and fourth.

We do not think that the verdict was contrary to " the evidence and law."

This Court has decided, that the 32 *Henry* VIII against Bracery and the buying of titles, is not in force. At Macon, June, 1857, *Doe ex dem. Morris vs. Monroe.* So there is nothing in the fifth and sixth grounds. .

Judgment affirmed.