## MORRISON *v.* WHITESIDE.

The execution and delivery of an instrument in writing, by which a purchaser of land, sold under a tax execution, released and quitclaimed to one who claimed to be its owner, made within the period in which the law gives to the owner a right to redeem the same, the consideration for which was the amount of the tax with interest and penalty as fixed by law, created no new title in the owner, passed no other interest of the maker than that acquired under the tax sale, and did not estop such maker from thereafter setting up, as against the grantee, a claim to the land, acquired subsequently to the execution of the quitclaim deed.

Argued October 11, — Decided October 30, 1902.

Complaint for land.　Before Judge Fite.　Dade superior court. March 17, 1902.

*B. T. Brock* and *J. P. Jacoway*, for plaintiff.

*Payne & Payne*, for defendant.

LITTLE, J.　The record before us makes the following case: Morrison instituted an action against Mrs. Whiteside to recover a one-fourth interest in lot of land number fifty-two in the tenth district, fourth section of Dade county, and for mesne profits.　Defendant denied that the plaintiff held title to any part of said lot, and alleged that he was not entitled to possession.　It appeared that James Cummings was the common grantor of each of the parties, and that in 1887 he conveyed the whole of the lot to Hugh Whiteside and J. M. Turney, and that on February 26, 1898, Turney and wife conveyed a one-fourth interest in the same to Morrison, the plaintiff.　It was shown on the part of the defendant that the lot of land in question was offered for sale by the sheriff of Dade county, under an execution issued by the tax-collector of that county against the lot as unreturned wild land, and that plaintiff became the purchaser at a sale which was held in August, 1896, and that on August 27, 1896, he executed to Mrs. Whiteside, the defendant, his quitclaim deed to said lot.　Plaintiff objected to the introduction of the deed from the sheriff to Morrison, and also to the introduction of the tax execution which accompanied the deed, the grounds of objection being that the execution did not recite that the taxes upon the land were due and unpaid.　He also objected to the admission of the deed, on the ground that it recited that the land had been advertised for thirty days, whereas the law prescribes that such advertisement shall be made for ninety days; and for the

reason that it did not show that the lot had been offered for lease, nor for sale in fractional parts. There was other evidence showing that the advertisement had not been made for ninety days. From the evidence of the plaintiff, which, so far as appears in the record, was unchallenged and uncontroverted, it appeared that the sale was made by the sheriff for taxes for the year 1895, and that after the sale and purchase by the plaintiff, the defendant through her agent redeemed from him the land so sold, claiming to be the owner of a part or the whole of the lot; and that in consequence thereof he made to her a quitclaim deed. There was uncontradicted evidence also to the effect that the land was reasonably worth $1,000, that it was not wild land but a part of it was cleared and buildings had been erected thereon, and that it had been cultivated and the buildings erected for as much as twenty years. The trial judge directed a verdict in favor of the defendant, and to such direction and the finding of the jury in accordance therewith Morrison excepted.

It can not be contested that, under the evidence which appears in the record, the plaintiff, when he concluded his evidence, had made a prima facie case to recover an undivided one-fourth interest in the land. It is claimed, however, that this right of recovery was defeated by the exhibition of the quitclaim deed which Morrison had made to the defendant in August, 1896; and that even if Morrison had shown that he acquired title in 1898, he was estopped from asserting it against the defendant. The Civil Code, § 3609, recognizes and declares a fundamental rule of the law of estoppel when it provides that the maker of a deed can not subsequently claim adversely to his deed under a title acquired since the making thereof. He is estopped from denying his right to sell and convey. As a corollary to the proposition, counsel for the defendant in error cites as a rule laid down by Mr. Washburn in his treatise on Real Property, that "a quitclaim deed passes the title of the vendor as effectually as it could with covenants of warranty." To meet this contention it was insisted that the tax sale at which Morrison became the purchaser was void for want of proper advertisement, that the land was sold as wild land when it really was not, and that the conveyance made thereunder carried no title. While for a number of reasons it appears that the sale was irregular and not made in accordance with law, and that no title vested in Morrison under the deed made by the sheriff in 1896, it is not

necessary that this point be considered or passed upon, for the reason that the question is, not what title Morrison acquired by the sheriff's sale, but whether the quitclaim deed made by him to Mrs. Whiteside in 1896 operated as an estoppel from the assertion by him, against the defendant, of the title which he acquired in 1898, without regard to whether he had taken any title under the tax sale. It is conceded that the instrument was in form and effect a quitclaim by Morrison in favor of Mrs. Whiteside to the land in question.

The contention made that a quitclaim deed has the same effect as a deed of conveyance with covenants of warranty is not sound. The rule as stated by Mr. Washburn, as will be found in the third volume of his treatise on Real Property, § 2239, is this (the italics being ours).: "*If the grantor have a title to the land,* a deed of quitclaim is just as effective to pass that title as a deed with covenants of warranty." The rule in relation to estoppels which arise from former conveyances is treated by the same author in the same volume, § 1915. After declaring that some forms of conveyance operate as an estoppel against those who make them, he says (§ 1916): "There are various reasons why a deed of simple release passes only such interest or estate as the releasor has at the time, and never operates by way of estoppel to convey any interest which he may afterwards acquire." And from a number of adjudicated cases and law-writers he announces the doctrine to be this (§1917): "In one sense a deed of acquittance or release may be said to be an estoppel, as it is a valid and final bar to all existing claims, and all the possibilities arising from previous contracts of which it imports a relinquishment," (but) "it can not affect rights of which the foundation is laid afterwards." Mr. Devlin, in his Treatise on the Law of Deeds (vol. 1, § 27, note 1), cites numerous cases which on examination have been found to support the principles which he announces in the following language: "A quitclaim deed purports to release and quitclaim only whatever interest the grantor possesses at the time. By the use of this form of conveyance he does not thereby affirm the possession of any title, and is not precluded from subsequently acquiring a valid title, and from attempting to enforce it; and conversely, a grantee in a quitclaim deed may deny that he received any estate by the deed." In Johnson *v.* Williams, 37 Kas. 179, the court expressly ruled that

"a quitclaim deed will not estop the maker thereof from afterwards purchasing or acquiring an adverse title or interest, and holding it as against his grantee," for which proposition a number of cases are cited.    See also Bruce *v.* Luke, 9 Kas. 201.    It being conceded that the instrument relied on to work an estoppel in this case is in the form of a release or quitclaim deed, it would seem that the contention of the defendant can not prevail.

There is, however, another equally as good reason why Morrison would not be estopped by the quitclaim deed to Mrs. Whiteside. It is practically conceded, certainly not denied, that the execution of that instrument was brought about by an application of Mrs. Whiteside to redeem the land which Morrison had bought at the tax sale.    Whether it be true that she was so interested in it as owner as to have this right is not the question, because the evidence shows that she represented herself to be the owner in whole or in part, and as such owner claimed the right of redemption; consequently she would not now be heard to question her ownership.    Having a claim on the land as owner, she had the right to redeem on payment to the purchaser of the amount of tax, the interest, and the penalty which the law fixes.    Not only so, but even if Morrison acquired a title, it was in subordination to this right of Mrs. Whiteside, and until the expiration of the period which the law fixes in which she might exercise this right her title as owner was not divested.    The purchase by Morrison gave him an inchoate right to the land which would not ripen into absolute title until the expiration of the time during which Mrs. Whiteside had the right to defeat it by redemption.    If these propositions are correct, then it was his legal duty to accept the amount which the law fixed, on tender of the same by Mrs. Whiteside.    Hence, in such acceptance his inchoate right acquired by the purchase was extinguished, and as a matter of law Mrs. Whiteside became entitled to have from Morrison evidence of that extinguishment.    In this case it came in the form of a quitclaim deed.    By the execution of such an instrument Morrison conveyed no title to Mrs. Whiteside; he had none; it was already vested in her, and the effect of the tax sale was only to defeat it, if she failed to redeem. Judge Cooley in his work on Taxation, p. 542, says, when treating on this subject:    "The purchaser has no title to the land until the time for redemption has expired.    He has consequently no con-

structive possession of the premises, and no more right to go upon and make use of them than any stranger to the title would have." Again the same author, on page 543 of the same work, says: "Redemption gives no new title; it simply relieves the land from the sale which had been made." And "if the purchaser had any other title or interest in the land besides that redeemed from, it remains entirely unaffected; his acceptance of the redemption money can not estop him from setting it up and relying upon it."

Mr. Black in his work on Tax Titles, § 348, declares: "The privilege of redemption, then, is an act of grace, affording the taxpayer a last chance to retrieve his misfortunes, repair his negligence, or correct his mistake. If accomplished with a due regard to all the requirements of the statute, it will annihilate the interest of the tax purchaser, expunge the incumbrance of the tax, and restore the estate to the position it would have occupied had the tax been paid when due." The same author in the same work (§ 377) declares, on authority, that "where a tax purchaser, upon claim of a right to redeem, conveys or assigns the legal title to the claimant, on receiving the amount of the redemption money, the transaction is a redemption, and the conveyance or assignment, as such, passes no title." In the case of *Ivey* v. *Griffin*, 94 *Ga.* 689, this court ruled that ".One who as owner redeems land sold for taxes, within the time limited by law, acquires no title to the land by reason of the act of redemption or of a conveyance made to him founded upon and recognizing his right to redeem." So, by the execution of the conveyance in this case, Mrs. Whiteside acquired no more title than she had before. If she acquired none, Morrison passed none. As to the latter, the effect of the instrument was to extinguish an inchoate right which before that time he held by his purchase at the tax sale. The conclusion is inevitable that this is not the kind and character of a deed which precludes the maker from thereafter asserting a claim to the property sold, under a title acquired subsequently to its execution.

Inasmuch as the plaintiff in the trial of the case was, under the evidence as it appears in the record, entitled to recover an undivided one-fourth interest in the land, and as the defenses thereto were not sufficient in law to bar this right, the trial judge erred in directing a verdict for the defendant.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*