## PERKINS *v.* RHODES *et al.*

No. 13574. APRIL 18, 1941 ADHERED TO ON REHEARING, JUNE 17, 1941.

*Bell & Bell* and *Curry & Curry,* for plaintiff.

*Hammond, Kennedy & Yow,* for defendants.

REID, Chief Justice. (After stating the foregoing facts.)

If the conveyance from Perkins to Mrs. Rhodes of February 21, 1930, is one under which the grantee would get the benefit of after-acquired independent title by the grantor, we may skip over and not be concerned with the legal effect of the transactions and conveyances by which Realty Trust & Savings Company acquired and subsequently conveyed title to Perkins. Under the stipulation, Realty Savings & Trust Company finally had good title, conveyed it to him, he reconveyed to Realty Savings & Trust Company to secure a debt, and this conveyance was canceled, reinvesting title in Perkins, where it reposed at his death, unless it was qualified by being subject to the conveyance to Mrs. Rhodes.

The rule that after-acquired title to real property will inure to the benefit of a previous grantee is recognized in this State by the Code, § 29-111: "The maker of a deed can not subsequently claim adversely to his deed under a title acquired since the making thereof. He is estopped from denying his right to sell and convey." It has frequently been applied. See *Bivins* v. *Vinzant,* 15 *Ga.* 521; *Thursby* v. *Myers,* 57 *Ga.* 155; *Parker* v. *Jones,* 57 *Ga.* 204; *Linsey* v. *Ramsey,* 22 *Ga.* 627; *Goodson* v. *Beacham,* 24 *Ga.* 150; *O'Bannon* v. *Paremour,* 24 *Ga.* 489; *Crawford* v. *Mobile & Girard R. Co.,* 67 *Ga.* 405, 420; *Terry* v. *Rodahan,* 79 *Ga.* 278, 292, 5 S. E. 38, 11 Am. St. R. 420) ; *Hall* v. *Davis,* 73 *Ga.* 101; *Cowart* v.

*Singletary,* 140 *Ga.* 435 (79 S. E. 196, 47 L. R. A. (N. S.) 621, Ann. Cas. 1915A, 1116); *Oliver* v. *Holt,* 141 *Ga.* 126 (80 S. E. 630); *Todd* v. *Williford,* 169 *Ga.* 543 (150 S. E. 912); *Donalson* v. *Yeates,* 173 *Ga.* 30 (159 S. E. 856); *Martin* v. *Citizens Bank of Marshallville,* 177 *Ga.* 871 (171 S. E. 711); *Bowlin* v. *Hemphill,* 180 *Ga.* 435 (179 S. E. 341); *Hill* v. *O'Bryan,* 104 *Ga.* 137; *Brown* v. *Story,* 94 *Ga.* 288; *Patterson* v. *Burns,* 150 *Ga.* 198; *Fite* v. *Walker,* 183 *Ga.* 46 (187 S. E. 95); *Kennedy* v. *Kennedy,* 183 *Ga.* 432 (188 S. E. 722); *Morris* v. *Butler,* 184 *Ga.* 845 (193 S. E. 883); *Shockley* v. *Storey,* 185 *Ga.* 790 (196 S. E. 702). It is founded upon the fundamental doctrine of estoppel, as stated by most of the text-writers in this field of the law. See *Morrison* v. *Whiteside,* 116 *Ga.* 459 (42 S. E. 729). There are some decisions which hold that this doctrine is operative only where there has been an express covenant of warranty in the prior deed. In the comment made in the annotation of U. S. National Bank of La-Grande *v.* Miller, 122 Or. 285 (258 Pac. 205, 58 A. L. R. 339, 380), it is stated: "Although there are a few cases which directly or by implication support the view that a covenant of warranty of title is essential to estop the grantor from asserting an after-acquired title or interest, according to the great weight of authority at the present time it is not always necessary that a deed should contain covenants of warranty in order to operate by way of estoppel upon the grantor against setting up an after-acquired title or interest against the grantee." There is a discussion of this principle in 19 Am. Jur. 612, § 12, from which the following is taken: "Estoppel by deed to assert an after-acquired title may arise by virtue of express covenants of warranty or certain other covenants from statutory enactments passing an after-acquired title, asserting estoppel by operation of law in such cases, or implying covenants as a matter of law from the fact of a conveyance, and from express recitals or averments or language in the conveyance clearly indicating that it was the intention and contemplation of the parties thereto to transfer some particular interest or estate of particular quality."

It is insisted in the present case that since in our State under the terms of the Code, § 29-302 "there is no implied warranty" in the sale of land, and since in the conveyance here involved there were no express covenants of warranty, it would not be correct to

apply the doctrine. In *Thomas* v. *Hudson,* 190 *Ga.* 622 (10 S. E. 2d, 396), which dealt with a mortgage, after pointing out that while in the decision of this court there cited there had been reference to the fact of warranty of title contained in the conveyance or mortgage, nevertheless the court had not gone "to the extent of directly holding the warranty necessary in order that the subsequently acquired title may inure to the benefit of the vendee or mortgagee," it was further stated: "We think therefore that the general rule as set forth by this court in the cases first cited in this division of the opinion [some of which had been reasoned upon the theory of warranty] should not be qualified by imposing as a condition the existence of an express warranty of title by the mortgagor. A different rule might obtain in a conveyance which went no further than merely to disclaim title. See *Morrison* v. *Whiteside,* 116 *Ga.* 459, 461 (42 S. E. 729).; *Taylor* v. *Wainman,* 116 *Ga.* 795 (43 S. E. 58); *Citizens & Southern National Bank* v. *Ellis,* 171 *Ga.* 717 (2, *a*), 729, 730 (156 S. E. 603)." The argument that a covenant of warranty is essential in the previous conveyance of course rests upon the proposition that there must have been something by way of representation by the grantor that he should not in equity be permitted later to repudiate. It is said that the instrument contained no express warranty, and that under our Code, as pointed out above, there is in such a transaction no implied warranty. But it must be remembered, as mentioned by Jenkins, J., in *Thomas* v. *Hudson,* supra, that the case does not involve a breach of warranty; it involves estoppel; and some courts have in such cases gone upon the theory that the character of the previous transaction out of which the conveyance resulted may be looked to, and that the intention of the parties will control. Certain it is that there may be other representations besides warranty itself, which equity would not allow the grantor to repudiate. These cases are referred to in the note in 58 A. L. R., supra. A great many of the decisions in other jurisdictions have also made a distinction between the case of a mortgagor and mortgagee and that of vendor and vendee. This distinction was recognized by us in *Thomas* v. *Hudson,* supra. It was said, in Clark *v.* Baker, 14 Cal. 612 (76 Am. D. 449), cited in Northrup *v.* Ackerman, 84 N. J. Eq. 117 (92 Atl. 909), to rest upon the following considerations: "The mortgagor holds a very different relation to the mort-

gagee from that of vendor to a vendee. By the execution of a conveyance without warranty, all relations between vendor and vendee are dissolved. They henceforth hold one another at arm's length, as they do the rest of the world. The dealing between them is completed—nothing further remains to be done. The reverse is the case between mortgagor and mortgagee. By the execution of the mortgage, the transaction between them is only begun. Every substantial part remains to be performed. The mortgagee is to return to the mortgagor the estate; and the mortgagor is to return to the mortgagee the money and interest secured; and until this is consummated, the obligation rests upon both to do nothing which can impair the rights of the other or embarrass their enforcement."

There is good reason to place the parties to a security deed with which we are now dealing, as respects the present question, on a different basis from' that of the usual case of bargain and sale of land. The transaction out of which it arises is wholly different. In applying the doctrine of estoppel of the grantor to claim under after-acquired title as against his grantee in the security deed, such grantee was merely put, by the trial judge in this case, on a parity with the mortgagee in *Thomas* v. *Hudson,* supra. Under his contract of sale (or so-called bond for title) he was to obtain "a good and sufficient title." This, according to our decisions, meant a warranty title. *Toomey* v. *Read,* 133 *Ga.* 855 (7), 856 (67 S. E. 100). He thus professed to secure his debt at least (by virtue of the terms of the contract of sale) in contemplation of holding "good and sufficient title." The obvious purpose—indeed the stated purpose —of the conveyance to Mrs. Rhodes was *to secure* her debt against Perkins. It therefore could not under its terms be regarded as a mere disclaimer of title. He owned an equitable interest in the land. It was subject to transfer by him, and his conveyance of it for the purpose of securing his debt "will operate upon that equitable estate." *Citizens Bank of Moultrie* v. *Taylor,* 155 *Ga.* 416 (117 S. E. 247). By its very terms it conveyed his "bond for title" interest and his "right, title, and interest" in the land. Every purchase-money payment made by him inured to the benefit of his grantee, and made her security that much more valuable. It would not be doubted that if he had completed his payments and obtained full legal title, her claim would have attached to it as effectively as

if he had owned it outright at the time of his conveyance. He was conveying to Mrs. Rhodes that title which it was contemplated under the bond he would get (together with what he already held). That title (which he would have acquired on compliance with his bond) he later acquired. His deed to it is still outstanding to secure his unpaid debt. It would therefore seem to be but an expression of the soundest principles of equity to say that he and those holding under him will be estopped to claim the property under a later-acquired title as against such grantee; and we so hold.

*Judgment affirmed. All the Justices concur, except Duckworth, J., who dissents.*

### ON MOTION FOR REHEARING.

REID, Chief Justice. A rehearing was granted in this case, to determine whether an apparently erroneous statement of fact had caused us to arrive at an erroneous conclusion. The author of the opinion had recited that the last security deed had been canceled, "reinvesting title in Perkins, where it reposed at his death." The motion for rehearing called attention that this conveyance was not canceled until after his death, and made the contention that the cancellation was upon payment of the debt by the widow who not only claimed the property as an heir but also claimed the right to have it set apart as a year's support. It is contended that such right is superior to the right of Mrs. Rhodes or her heirs. We do not review our ruling as to the character of conveyance made by Perkins to Mrs. Rhodes, being satisfied with what was originally stated in reference to it, and nothing being presented in the later briefs to change these views; but we do re-examine the question as to the effect of this latter transaction. Careful re-examination of the record does not in any way disclose that the payment of Perkins' indebtedness to the grantee in the last security deed was made by the widow, albeit such may be the fact, since the date of cancellation of the deed is shown to be on a date after Perkins' death. Viewing the case in reference to Mrs. Perkins' claim to the property as for year's support, we reach the same conclusion as originally announced. Such a claim is of course subordinate to a valid outstanding transfer of title as by a security deed. See *Lunsford v. Kersey,* 191 *Ga.* 738 (13 S. E. 2d, 803) ; *Smalley v. Bassford,* 191 *Ga.* 642 (13 S. E. 2d, 662), and cit. The payment to the Realty Savings & Trust having been voluntary, so far as the record

here discloses, and there being no claim as by a transferee of the security deed (it appearing to have been canceled), and the claim made not being founded on subrogation, it follows that title, upon the cancellation of the deed, stood in the heirs at law or the assigns of Perkins; and the deed to Mrs. Rhodes not being satisfied, the property came under the terms of its conveyance, and the right of Mrs. Perkins to a year's support was subordinate to those holding under it.

*The judgment is adhered to. All the Justices concur.*