42909.   LOVETT et al. v. EMORY UNIVERSITY, INC.

ARGUED JUNE 30, 1967—DECIDED SEPTEMBER 6, 1967.

Henritze, Baker & Bailey, Walter M. Henritze, Jr., for appellants.

Hurt, Hill & Richardson, James C. Hill, for appellee.

JORDAN, Presiding Judge. ■ This is a case of novel impression in Georgia, in that the plaintiffs seek to show a cause of action for wrongful death based solely on the alleged breach of an implied warranty arising from the furnishing of blood by a hospital to a patient. After careful consideration of all aspects of the case, we are of the opinion that such a blood transfusion is an incidental part of the service furnished by a hospital in the course of medical treatment (here a pre-operative procedure) and is not a sales transaction under our statutes or otherwise, even if the cost of the blood is specified as a separate item in the charges made. As to the Uniform Commercial Code-Sales we think it is significant that the General Assembly expressly provided that the "serving for value of food or drink . . . is a sale" of goods (*Code Ann.* § 109A-2—314 as limited by *Code Ann.* § 109A-2—102) without expressly including other service-type transactions as covered by any implied warranty.

Various other jurisdictions have considered the issue of recovery for an injury or death caused by a blood transfusion under the theory of a breach of an implied warranty in the sale of the blood. These courts have generally refused to recognize the theory as affording any basis for recovery, adhering to the view that in a blood transfusion service predominates, and that even if a separate charge is made for the blood such charge is not indicative of a sale but is merely an incidental feature of the services rendered.

In 1954 the New York Court of Appeals in the leading case determined that the transaction was a service and not a sale, and expressly rejected the theory of a breach of an implied warranty to support an action for injuries from serum hepatitis caused by a blood transfusion. Perlmutter v. Beth David Hospital, 308 N. Y. 100 (123 NE2d 792). Since that time other states, in identical or similar type cases usually involving hospitals as defendants, have followed the Perlmutter case: *Washington,* 1956, Gile v. Kennewick Public Hospital District, 48 Wash. 2d 774 (296 P2d 662, 59 ALR2d 761); *Utah,* 1961, Dibblee v. Dr. W. H. Groves Latter-Day Saints Hospital, 12 Utah 2d 240 (364 P2d 1085); *Texas,* 1961, Goelz v. J. K. & Susie L. Wadley Research Institute &c. (Tex. Civ. App.), 350 SW2d 573; *Wisconsin,*

1964, Koenig v. Milwaukee Blood Center, 23 Wis. 2d 324 (127 NW2d 50); that same year the federal district court in Colorado reached the same result in considering Colorado law in a case against a hospital involving serum hepatitis injuries; Sloneker v. St. Joseph's Hospital, 233 FSupp. 105; *Minnesota*, 1965, Balkowitsch v. Minneapolis Blood Bank, 270 Minn. 151 (132 NW2d 805); *Arizona*, 1965, Whitehurst v. American Nat. Red Cross, 1 Ariz. App. 326 (402 P2d 584). In 1966 the Florida Court of Appeals, Second District, rejected what appears to have been the consistent view in other jurisdictions as shown above, and held that the furnishing of blood by a *blood bank* is a sale subject to an implied warranty in a serum hepatitis case (Russell v. Community Blood Bank (Fla. App.), 185 S2d 749), but noted a distinction between a blood bank defendant and a hospital defendant by stating that a hospital supplied blood as part of its overall service, whereas a blood bank did not (p. 752). On certiorari the Florida Supreme Court approved this view. Community Blood Bank v. Russell, (Fla.) 196 S2d 115. We also note that in 1960 a California court upheld recovery in a poliomyelitis vaccine case on the theory of a breach of warranty, and in so doing viewed the transaction as one outside the scope of a California statute expressly declaring the furnishing of blood and blood products to be a service and not a sale. Gottsdanker v. Cutter Laboratories, 182 Cal. App. 2d 602 (6 Cal Rptr 320, 79 ALR2d 290). See also Merck & Co. v. Kidd, 242 F2d 592, a 1957 holding by the United States Court of Appeals, Sixth Circuit, to the effect that the sale of blood plasma containing the virus causing serum hepatitis is not a sale of an adulterated drug under the Tennessee Food, Drug and Cosmetic Act.

The court joins the overwhelming majority view that the furnishing of blood by a hospital in the course of treatment is not a sales transaction covered by an implied warranty under the Uniform Commercial Code or otherwise.

■ While the preceding division of the opinion is controlling on the issue as raised by the petition, we are of the further opinion that no cause of action is set forth since our wrongful death statutes limit recovery to a homicide resulting "from a crime or from criminal or other negligence," with such right of recovery

specifically extended to death caused by a person "knowingly or carelessly" selling unwholesome provisions, the defect being unknown to the purchaser, or adulterated drugs or liquors; or if the person sells drugs and medicines, by "knowingly or negligently" furnishing the wrong articles or medicine. *Code* §§ 105-1301, 105-1101—105-1104.

Giving these statutes a strict construction, as we must, a wrongful death action is one in tort strictly limited to death caused by a crime or negligence, except with respect to the sale of specified articles intended for human consumption or use, where either knowledge of the defect or negligence by the seller is an essential element. Thus, even though the petition sounds in tort (see *Wilkinson v. Rich's, Inc.,* 77 Ga. App. 239 (2) (48 SE2d 552); *R. H. Macy & Co. v. Vest,* 111 Ga. App. 85 (1) (140 SE2d 491)), it does not show a cause of action for wrongful death, for there are no allegations of a crime or negligence to support the action directly under the provisions of Ch. 105-13 of the Code, or indirectly under Ch. 105-11 of the Code, even assuming that a blood transfusion is a sale of goods cognizable under the Uniform Commercial Code or otherwise. There is nothing in the petition to bring it within the expressed statutory limitations on an action for wrongful death in Georgia as set forth above.

■ For the reasons stated above, the trial court properly sustained the general demurrer to the petition.

*Judgment affirmed. Deen and Quillian, JJ., concur.*