A91A0166. MAIL CONCEPTS, INC. v. FOOTE & DAVIES, INC.
(409 SE2d 567)

SOGNIER, Chief Judge.

Mail Concepts, Inc., successor in interest to Peach State Mailing, Inc., brought suit against Foote & Davies, Inc. on an account assigned to Mail Concepts by Peach State. The trial court held enforceable the non-assignment clause in the contract between Foote & Davies and Peach State and granted summary judgment to Foote & Davies. Mail Concepts appeals.

The contract between appellee and Peach State, which was me-

morialized on a purchase order form prepared by appellee, provided that appellee would deliver to Peach State 756,000 copies of a health club magazine to be distributed on behalf of a client of appellee. Peach State would rubber plate imprint the recipient health club's name on the cover of each magazine, box the magazines in cartons, and then key the recipients' names for shipping, print the shipping labels, prepare the UPS manifest, and ship the cartons. The purchase order itemized separately the cost of each step, including a price of $14,840 for preparation of imprinting plates for each of the 742 health club recipients, and stated a maximum total price of $29,000. The contract also provided that "[n]either this order no[r] any interest under it may be assigned by [Peach State] without the prior written consent of [appellee]." Appellee refused to pay Peach State's invoice because its client considered the quality of the imprinting to be inadequate. Peach State subsequently was liquidated and the account receivable for appellee's account was assigned to appellant without the prior consent of appellee.

1. On appeal, appellant contends the trial court erred by enforcing the non-assignment clause in the purchase order. Arguing that the contract either was for the sale of goods or was severable into separate sales and services transactions, appellant urges this court to apply OCGA § 11-2-210 (2), the provision of the Uniform Commercial Code which authorizes assignment of choses in action even if the underlying contract forbids assignment.

Article 2 of the UCC applies only to "transactions in goods," OCGA § 11-2-102, with "goods" defined as things "which are movable at the time of identification to the contract for sale." OCGA § 11-2-105 (1). A "sale" consists in the passing of title from the seller to the buyer for a price, OCGA §§ 11-2-106 (1), 11-2-401, and a "seller" is a "a person who sells or contracts to sell goods." OCGA § 11-2-103 (1) (d). Our courts have extended the reach of Article 2 to transactions "analogous" to sales. *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381, 387-393 (215 SE2d 10) (1975). In determining whether a contract is for the sale of goods or is analogous to a sale of goods within the meaning of the Article 2 definitions, we must look to the primary or overall purpose of the transaction. Id. at 391; see *Gee v. Chattahoochee Tractor Sales*, 172 Ga. App. 351, 353 (2) (323 SE2d 176) (1984); accord *North American Leisure Corp. v. A & B Duplicators, Ltd.*, 468 F2d 695, 697 (2d Cir. 1972) (look to essence of agreement and see whether goods or services predominate). If the primary purpose of the agreement is the rendering of services, even if goods are supplied as part of that performance we will view the contract as one for services with an incidental furnishing of goods, and the UCC does not apply. *Gee*, supra; *Mingledorff's, Inc. v. Hicks*, 133 Ga. App. 27-28 (1) (209 SE2d 661) (1974); *Lovett v. Emory Univ.*, 116 Ga. App. 277, 278-279

(1) (156 SE2d 923) (1967).

We find the contract at issue was one for services and labor because the primary purpose of the transaction was the imprinting, packaging, labeling, and shipping of the magazines. Contrary to appellant's argument, we do not find the production of imprinting plates made the contract into one for the sale of goods because the plates were prepared only for the purpose of carrying out the imprinting. There is no evidence appellee ever took title to the plates in accordance with OCGA § 11-2-401 or that the parties intended it would do so. Indeed, appellant acknowledges that the parties contemplated Peach State would perform future imprinting, labeling, and shipping services for subsequent issues of the magazine using the same imprinting plates. This transaction is analogous to the one addressed in *Wm. H. Wise & Co. v. Rand McNally & Co.*, 195 FSupp. 621, 625-626 (SDNY 1961), where the court held that a contract for printing and binding books was one of services and labor even though the printer supplied printing and binding material.

Moreover, the fact that the purchase order priced the preparation of the plates as a separate line item does not alter the character of the overall transaction as one for the provision of services. *Lovett*, supra at 278 (1). Nor do we agree with appellant that the preparation of the plates was a severable portion of the total contract performance, as the essence of the contract was completion of the entire service of imprinting, packaging, labeling, and shipping because that was the service appellee was obligated to provide to its client. See *Williams v. Claussen-Lawrence Constr. Co.*, 120 Ga. App. 190, 191 (169 SE2d 692) (1969). Thus, as in *Gee*, supra, and *Lovett*, supra, the provision of services predominated, and supplying of the goods, the plates, was incidental to the overall performance of the contract. See *North American Leisure*, supra. Consequently, the transaction does not fall within the coverage of Article 2 of the UCC, and the assignment clause of OCGA § 11-2-210 (2) is not applicable. *Mingledorff's*, supra at 27-28 (1).

2. Alternatively, appellant maintains that OCGA § 11-9-318 (4), which bars contract terms that prohibit assignment of accounts or require the account debtor's consent to assignment, applies to void the non-assignment clause at issue. We do not agree, for OCGA § 11-9-104 (e) specifically excludes from Article 9 coverage "a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only."

3. Since we have decided the UCC does not apply, the remaining question raised by appellant is whether general legal principles concerning assignment of contract rights and obligations permit the assignment at issue. OCGA § 44-12-22 provides in pertinent part that

"all choses in action arising upon a contract may be assigned so as to vest the title in the assignee." Georgia courts have recognized that certain types of contracts, such as agreements for personal services and those requiring peculiar skills or qualifications, are inherently not assignable. E.g., *Decatur North Assoc. Ltd. v. Builders Glass*, 180 Ga. App. 862, 865 (350 SE2d 795) (1986). However, as was first recognized in *Cowart v. Singletary*, 140 Ga. 435, 440-452 (79 SE 196) (1913), if a contract does not fall within one of these exceptions, once a party to the contract performs its obligations thereunder so that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent even if the contract contains a non-assignment clause. Accord *Decatur North*, supra. The courts have reasoned that non-assignment clauses have no force and effect in such circumstances because once the party whom the non-assignment clause is intended to protect has received full performance, it cannot insist on adherence to the clause because the purpose of the clause has been fulfilled. *Cowart*, supra at 451; see *Decatur North*, supra.

In the case at bar, there is no question of personal services or any other circumstance that would make the contract inherently non-assignable. Peach State performed the services for which it was obligated under the contract at issue, as the magazines were imprinted, labeled, and shipped as required (although appellee contends this performance was deficient). Having no remaining obligations, Peach State "had the contractual *right* to enforce appellee's liability [for payment], which right was *not* coupled with any further liability on [Peach State's] part to appellee. . . . Since it was only appellee who owed any further potential duty under the contract[,] and since no personal confidences were involved in connection with [Peach State's] countervailing contractual right to enforce that duty, the instant case would come within the general rule of assignability of contract rights. It follows that there would be no legal impediment to the . . . assignment by [Peach State to appellant] of its existing rights under the contract without the prior consent of appellee." *Decatur North*, supra at 865. We find that *Mingledorff's*, supra, is distinguishable because there the contract was still executory and apparently involved personal services. See *Decatur North*, supra. We hold that Peach State's right to enforce appellee's obligations under the contract was assignable to appellant despite the existence of the non-assignment clause, and accordingly we reverse. Appellant is now entitled to proceed with its action against appellee subject to and charged with all the equities that could have been asserted against Peach State by appellee at the time of the assignment. See *Sheffield v. Preacher*, 175 Ga. 719, 722 (165 SE 742) (1932).

*Judgment reversed. McMurray, P. J., Banke, P. J., Birdsong,*

*P. J., Carley, Pope, Beasley and Cooper, JJ., concur. Andrews, J., concurs in part and dissents in part.*

ANDREWS, Judge, concurring in part and dissenting in part.

While I fully concur with Divisions 1 and 2, I respectfully dissent as to Division 3, as I do not believe *Cowart v. Singletary*, 140 Ga. 435 (79 SE 196) (1913) and *Decatur North Assoc. v. Builders Glass*, 180 Ga. App. 862 (350 SE2d 795) (1986) support the conclusions drawn from them, but do believe that the non-assignment clause here precluded assignment.

*Cowart* originated as an equitable action seeking, among other equitable relief, to require Grimsley, the holder of legal title to real estate by virtue of a warranty deed from Holmes, to execute a deed to Singletary, the holder of equitable title by virtue of a warranty deed from Cowart who held by a bond of title from Holmes, the bond issuing before the warranty deed to Grimsley. The bond for title contained the non-assignment clause reading "[a]nd it is further stipulated that this bond is not transferrable to any one." The case was referred to an auditor who found in favor of Singletary, affirmed by the trial court and reviewed and affirmed by the Supreme Court. As stated by that court, the question posed was "[i]f the insertion of such a stipulation [non-assignment clause] in the bond for title rendered the conveyance by [Cowart] to Singletary absolutely void, so that he acquired no right thereunder and no equity arose in his favor by reason of the payment of a large part of the purchase-money to Mrs. Holmes, and so that Mrs. Holmes could make a conveyance to Grimsley, receiving from him the balance of the purchase-money, less what Singletary had paid, and so that Grimsley could convey a life-interest in half of the land to Caroline Cowart, and Singletary could thus be entirely left out and would have no equitable right whatever, then the finding of the auditor and the decree of the court were wrong." *Cowart*, at 440-441.

It was determined that Grimsley took his deed with actual notice of the bond for title, and that Grimsley's and Cowart's arguments rested upon "one or all of three contentions:" (1) the bond was analogized to a conveyance in fee simple in which there could be a limited and reasonable restriction upon alienation; (2) the bond was analogized to a chose in action which was not assignable at common law, but is now and was then assignable by statute; and (3) the bond was considered a contract and Holmes had the right to provide with whom she desired to deal and the contract should not be assignable. Id. at 441-442. The opinion then states that "[b]efore taking up each of these contentions separately, it may be well to note that, strictly speaking, *there was no transfer of the bond*, but that [Cowart] made a warranty deed to Singletary." Id. at 442. (Emphasis supplied.)

Thus, whatever interest Cowart eventually took would transfer to the grantee, Singletary, unless Cowart was entitled to rely upon her agreement with Holmes, who had been fully compensated, not to transfer Cowart's rights under the bond to defeat a warranty deed which Cowart executed.

The court rejected the first two proffered analogies, then discussed the third, resulting in our present disagreement. The court recognized two categories of contracts, the first involving personal services, skill, science or qualifications which are not assignable even in the absence of a non-assignment clause.

The provision of *Cowart* relied upon on page 781 of the majority is apparently the discussion of the remaining class of contracts, executory contracts. The majority states the rule in *Cowart* to be that in otherwise assignable contracts, where one party has performed thereunder "so that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent *even if the contract contains a non-assignment clause.*" (Emphasis supplied.) All of the cases then cited deal only with the transfer of title to land in cases where the vendor has received full payment for the property, holding only legal title thereto, while the original purchaser holds equitable title which he may freely convey. The Georgia cases cited contain no non-assignment clauses and the foreign cases, which we choose not to follow, likewise deal only with real estate sales where the vendor of the real estate was relying on the non-assignment clause in refusing to transfer legal title, having received full payment. That a court of equity may choose to rely on such a situation to grant equitable relief to the purchaser and his assignee does not equate to the broad principle announced by the majority which would apply to all types of contracts.

Finally, as noted by the *Cowart* court, the maker of the stipulation, Holmes, while named as a party to the suit, had died and no administrator was appointed to represent her in the case, neither did she in her lifetime attempt to enforce the stipulation. That *Cowart* is restricted to real property transfers is supported by *Perkins v. Rhodes*, 192 Ga. 331, 333 (1) (15 SE2d 426) (1941) which cites it as an example of the principle that the maker of a deed is estopped from denying his right to convey after-acquired title to real property. See also *Rucker v. Corbin*, 188 Ga. App. 182, 183 (372 SE2d 512) (1988).

Neither does *Decatur North* support the position taken, since the contract there also contained no non-assignment clause. I believe this case is indistinguishable from *Mingledorff's, Inc. v. Hicks*, 133 Ga. App. 27 (209 SE2d 661) (1974) and the non-assignment clause is valid.

DECIDED JULY 16, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 —

Ralph G. McCallum, Jr., for appellant.
Alembik, Fine & Callner, G. Michael Banick, for appellee.