**In the Matter of Deborah COOPER, Debtor.**

**R. Michael Souther, Chapter 7 Trustee, Movant,**

v.

**Safeco Life Insurance Company and Safeco Assigned Benefits Service Company, Respondents.**

**Bankruptcy No. 98–21222.**

United States Bankruptcy Court, S.D. Georgia, Brunswick Division.

Nov. 24, 1999.

---

R. Michael Souther, Brunswick, GA, for trustee.

Wiley A. Wasden, III, Savannah, GA, for Debtor.

### ORDER ON TRUSTEE'S MOTION FOR SALE OF PROPERTY

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Debtor filed a petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code on September 24, 1998. On February 5, 1999, R. Michael Souther, Trustee, filed a motion to sell benefits owing to Debtor arising from the prepetition settlement of a tort claim for the wrongful death of her husband. Safeco Life Insurance Company and SABSCO intervened in the bankruptcy case and object to the sale of the settlement benefits. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(N) and heard the matter on May 13, 1999. Pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

In 1989, Deborah Cooper, formerly Deborah Lewis, filed a lawsuit against Principal Casualty Insurance Company ("Principal") for the wrongful death of her husband, Jed Lewis, when he was struck and killed by one of Principal's insureds. The lawsuit also included a claim for bad faith on the part of Principal in refusing to make payments to Debtor. On September 18, 1990, Debtor signed a settlement agreement and release ("Settlement Agreement") with Principal, which established a structured settlement payment as follows:

1. $10,000.00 at the signing of the settlement;  $10,000.00
2. $1,000.00 per month for life or thirty years, whichever is longer beginning on September 20, 1990;  $360,000.00
3. $1,000.00 per month for 48 guaranteed payments beginning on December 27, 2001;  $48,000.00

| | |
|---|---|
| 4. $1,000.00 per month for 48 guaranteed payments beginning on June 16, 2004; | $48,000.00 |
| 5. $1,000.00 per month for 48 guaranteed payments beginning on November 4, 2005; | $48,000.00 |
| 6. $520,000.00 payable on September 20, 2020. | $520,000.00 |
| Total payments over the life of the annuity are: | $1,034,000.00 |

(Doc. 56, Ex. A, ¶ 2). Under the Settlement Agreement, Principal made a "qualified assignment" of its obligation to SAFECO Assigned Benefits Service Company ("SABSCO"). (Doc. 56, Ex. B). Principal was thereby relieved of any responsibility for the periodic payments. (Doc. 56, Ex. A, ¶ 5.) SABSCO then purchased an annuity policy from SAFECO Life Insurance Company ("SAFECO"), as contemplated by the Settlement Agreement. (Doc. 56, Ex. A, ¶ 6). As the assignee of Principal, SABSCO is the "sole owner of the annuity policy and shall have all rights of ownership." (Doc. 56, Ex. A, ¶ 6).

On September 24, 1998, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. The Trustee filed his motion for private sale of estate property on February 5, 1999, in order to assign the periodic payments under the Settlement Agreement to Singer Asset Finance Company ("Singer").[1] (Doc. 31). SAFECO Life Insurance Company ("SAFECO") and SAFECO Assigned Benefits Services Company ("SABSCO") objected to the Trustee's proposed sale and moved to intervene in the bankruptcy case. (Doc. 50). The motion to intervene was granted on May 13, 1999. SAFECO/SABSCO object to the sale or assignment of the periodic payments on the grounds that the Settlement Agreement does not permit the beneficiary, Mrs. Cooper, to assign her rights and obligations under the contract. Both SAFECO and Debtor object to the sale or assignment of the payments under

the structured settlement agreement, contending that the periodic payments are exempt property under O.C.G.A. § 44–13–100. (Doc. 34, 50). The Trustee objects to the Debtor's claimed exemptions in the settlement proceeds. (Doc. 55). This Court has reserved its ruling on that issue until a later time; this Order will address only the effect of the anti-alienation clause on the ability of the Trustee to assign the periodic payments to Singer.

## CONCLUSIONS OF LAW

Section 704 of the Bankruptcy Code provides:

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close the estate as expeditiously as is compatible with the best interests of parties in interest.

11 U.S.C. § 704(1). The Trustee in this case has filed a motion to sell property of the estate under Section 363 of the Code, which provides:

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1). Outside of its contention that the periodic payments are exempt property, SAFECO has not contested that the periodic payments are property of the estate under 11 U.S.C. § 541(a). (*See* Doc. 57). The issue before this Court is therefore whether the Trustee, standing in the shoes of the Debtor, is bound by Paragraph 3 of the Settlement Agreement, which states:

3.0 Payee's Right to Payments.

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any payee; nor shall the

---

1. Trustee's original motion stated that "the property to be sold, assigned, transferred and conveyed is an annuity contract with Safeco Life Insurance Company....Your Trustee seeks authority from this Court to consummate the sale of the heretofore described annuity contract." (Doc. 31). Subsequent filings and oral argument before this Court on May 13, 1999, have made clear that the sale at issue is actually an assignment of the right to payments under the Settlement Agreement, rather than the annuity contract.

Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic · Payments, or any part thereof, by assignment or otherwise.

(Doc. 56, Ex. A, ¶ 3).

First, the Trustee argues that the Settlement Agreement is ambiguous and should thus be construed in favor of the Debtor. Second, the Trustee argues that even if the Agreement is not ambiguous, the terms of Paragraph 3 do not prevent the Debtor, and thus the Trustee, from assigning the right to receive payments under the contract.

## I. Ambiguous Terms

■ The Trustee first contends that the terms of the Settlement Agreement are ambiguous and contradictory. He points to Paragraphs 1.3 and 13 of the Agreement, which provide:

1.3 This release, on the part of [Debtor], shall be fully binding and complete settlement among [Debtor], Principal Casualty Insurance Company and its subsidiaries and *their* heirs, assigns and successors.

13 Entire Agreement and Successors in Interest.

This Settlement Agreement contains the entire agreement between [Debtor] and Principal Casualty Insurance Company and its subsidiaries with regards to the matters set forth in it and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assignees of *each*.

(Doc. 56, Ex. A, ¶ 1.3, 13) (emphasis supplied). That these two paragraphs contemplate the ability of each party to assign the contract stands in direct contrast to Paragraph 3, which purports to limit the ability of one party—Debtor—to assign her rights to the contract.

■ An ambiguous contract must be given that construction "which goes most

strongly against the party executing the instrument or undertaking the obligation." O.C.G.A. 13–2–2(5). Given that these 3 paragraphs seem to negate each other, or at least present an ambiguous and doubtful result, I find that Debtor, and therefore the Trustee, may assign the right to receive periodic payments under the Settlement Agreement. *Accord Cedar Point Apartments Limited v. Cedar Point Investment Corp.*, 693 F.2d 748, 752 (8th Cir.1982) (paragraph specifying that agreement is binding on principals and "each of their respective ... assigns" is evidence of consent to delegation of otherwise nondelegable duty); *KN Gas Supply Services Inc. v. American Production Partnership–V Ltd.*, 994 F.Supp. 1283, 1286 (D.Colo.1998) (otherwise unassignable contract made assignable by insertion of "successors and assigns" provision).

## II. Terms of the Anti–Assignment Provision

■ Even if the contract were not ambiguous, I find that the Trustee may still assign the right to receive periodic payments under the Settlement Agreement. The law "draws a distinction ... between assignment of performance due under a contract and assignment of the right to receive contractual payments." *Charles L. Bowman & Co. v. Erwin*, 468 F.2d 1293, 1297 (5th Cir.1972). Under Georgia law, "once a party to the contract performs its obligations thereunder so that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent *even if the contract contains a non-assignment clause*." *Mail Concepts, Inc. v. Foote & Davies, Inc.*, 200 Ga.App. 778, 781, 409 S.E.2d 567, 570 (1991), *cert. denied*, September 6, 1991. (Emphasis supplied).[2]

■ Debtor's obligation under the Settlement Agreement is found in Paragraph 1, entitled "Release and Discharge":

---

**2.** The many Georgia cases relied upon by Defendants where a contrary result was reached involved contracts that remained executory and are therefore distinguishable.

In consideration of the payments set forth in Section 2, Plaintiff hereby completely releases and forever discharges Principal Casualty Insurance Company and its subsidiaries from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of service, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the Plaintiff now has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings).

(Doc. 56, Ex. A, ¶ 1.1). Debtor also delivered, concurrently with the execution of the Settlement Agreement, a Dismissal with Prejudice of the Complaint. (Doc. 56, Ex. A, ¶ 8). Debtor having fully performed her duties under the Settlement Agreement, the contract is no longer executory and thus the Trustee, standing in the shoes of the Debtor, may assign her rights to receive the payments given as consideration for that performance. *Mail Concepts*, 200 Ga.App. at 781, 409 S.E.2d 567. That the non-assignment clause is unenforceable once the party has fully performed is reinforced by the recent opinion of *Williams v. Mayflower Ins. Company, Ltd.*, 238 Ga.App. 581, 519 S.E.2d 506 (1999).[3]

■ As another court discussing this same issue has noted,

[T]he modern trend with respect to contractual prohibitions on assignments is to interpret these clauses narrowly, as barring only the delegation of duties, and not necessarily as precluding the assignment of rights from assignor to assignee. The rationale behind these cases is derived from the implicit recognition that the obligor, the party obligated to perform, would not suffer any harm by a mere assignment of payments under a contract.

*Wonsey v. Life Insurance Company of North America*, 32 F.Supp.2d 939, 943 (E.D.Mich.1998) (discussing cases from other jurisdictions). Where significant harm will not result to the obligor, the anti-assignment clause is to be construed "for the benefit of the obligor, and not to prevent the assignee from acquiring rights against the assignor." *Fox–Greenwald Sheet Metal Co. v. Markowitz Bros.*, 452 F.2d 1346, 1351 (D.C.Cir.1971); *see also* Restatement (Second), Contracts § 322(2).[4]

■ SAFECO argues that the Trustee's assignment of the rights to future periodic payments to Singer will cause harm to SAFECO as the obligor because the special tax treatment provided by structured settlements will be lost, subjecting SAFECO to increased tax risk and liability. I find that this risk is too speculative to be a material harm sufficient to trigger the prospective harm rule regarding assignments. SAFECO bases its arguments on tax laws which have not yet been enacted, but exist only as proposed bills in the federal and

3. SAFECO argues in its brief that the court in *Williams* "reject[ed] the presumption that the payment of the premiums was sufficient to nullify the non-assignability provision." (Doc. 57, p. 16). SAFECO's argument misses the mark. Not only did the *Williams* court not "reject" that argument, but the Court stated specifically that the plaintiff's argument under *Mail Concepts* "was not raised or decided in the trial court. Thus, we will not consider this issue for the first time on appeal." *Williams*, 519 S.E.2d at 508. The Court in *Williams* went on to state that "[i]t was incumbent upon [the plaintiff] ... to establish that [the assignor] had fully performed

under the contract and to provide the trial court with any evidence showing why the non-assignment clause may be nugatory." *Id.* The Court thus acknowledges and reaffirms the holding of *Mail Concepts*, although finding against the plaintiff on other grounds.

4. "A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested ... is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition."

state legislatures. (Doc. 57, p 25–30); *see also Grieve v. General American Life Insurance Company,* 58 F.Supp.2d 319 (D.Vt.1999) (factoring company purchases so subvert Congressional policy that bills have been proposed to penalize factoring companies).

This argument has been rejected by the Third Circuit Court of Appeals, which found that the assignee of the obligor (in this case, SABSCO) presumably exercises its exclusion under Section 130 of the Internal Revenue Code at the time it assumes the obligation to make payments under the Settlement Agreement. *Western United Life Assurance Company v. Hayden,* 64 F.3d 833, 842 (3d Cir.1995). The circuit court thus rejected the argument that assignment by the beneficiary of the settlement agreement would retroactively create adverse tax consequences for an obligor who has already exercised its exclusion under the Tax Code. *Id.* I hold that any proposed legislation which might take effect in the future would not adversely impact SAFECO retroactively. *See Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994) (Statute will not have retroactive effect if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.").

## CONCLUSION

Under Georgia common law, the Trustee may assign rights under a contract where the Debtor has fully performed and the contract is no longer executory. Debtor signed the release and filed a Dismissal with Prejudice of her personal injury claim at the time the agreement was executed. I find that the Trustee may assign the right to payments under the Settlement Agreement to Singer Asset Finance Company.

At the hearing conducted to consider the Trustee's sale, the parties and the Court recognized that the threshold issue was whether the Trustee had the right to assign the future stream of payments under the settlement agreement. Thus, this Order is limited to that threshold issue. Unresolved at the time of the hearing, however, was whether the price of $215,000.00 negotiated by the Trustee with Singer Asset Finance Company is, in fact, an appropriate lump sum payment to be received by the Trustee in exchange for the assignment of a policy whose total value, if paid out in accordance with its terms, will amount to $1,034,000.00. The further unresolved issue is the Debtor's contention that Georgia law gives her the right to fully exempt whatever sums are received by the Trustee from her bankruptcy estate.

Having concluded that the right to receive future payments may be assigned, I direct that a further hearing be conducted to inquire into the fair market value of the assignment in order to adjudge that value against the amount for which the Trustee proposes to sell the annuity contract. The issue of the Debtor's right to exempt those proceeds will also be examined at the same hearing.

## ORDER

In consideration of the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY THE ORDER OF THIS COURT that the Trustee's motion is GRANTED insofar as he seeks authority to assign the Debtor's future stream of income payments.

The Clerk is directed to issue a notice of a continued hearing at which time the Trustee will bear the burden of proving that the price represents a fair market value for the assignment and the Debtor will have the burden of proving her entitlement to exempt any or all of the proceeds of that assignment.