**In the Matter of Willie Junior TERRY, Debtor.**

**Bankruptcy No. 99–12613–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Feb. 18, 2000.

the *Muka* court determined that the creditor could not register the judgment in Florida.

R. Brian Wooldridge, Mann & Wooldridge, Newnan, GA, Local Counsel for J.G. Wentworth.

Ron C. Bingham, II, Chapter 13 Trustee, Atlanta, GA, for Chapter 13 Trustee.

H. Brooks Cotton, Newnan, GA, for debtor.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court are objections to Debtor Willie Terry's Chapter 13 plan filed by J.G. Wentworth, S.S.C., Limited Partnership (hereinafter "Wentworth") and the Chapter 13 Trustee. Wentworth also objects to the Debtor's claimed exemption in an annuity. After conducting a hearing on the plan objections on December 9, 1999, the Court took this case under advisement.[1] Extensive pre and posthearing briefs have been submitted by the parties, including the Chapter 13 Trustee. At issue in this controversy is whether certain annuity payments assigned by the Debtor to Wentworth constitute estate property. Having determined that this matter falls within the subject matter jurisdiction of the Court, *see* 28 U.S.C. § 157(b)(2)(A), (L), and (O), it shall be disposed of as follows.

#### BACKGROUND

The facts in this case are undisputed. On November 24, 1993, the Debtor's wife, Patsy Ann Terry, was killed in an automobile accident in Meriwether County, Georgia. Sometime in 1994, the Debtor, as the surviving spouse, administrator of his deceased wife's estate, and guardian of the property of Donte Terry, filed a wrongful death action against C & B Hauling and Grading, Inc. and Clayton Allen Reese in the Superior Court of Troup County, Georgia. The defendants in the state court action were insured by General Agents

Jeffrey S. Marchant, Beket & Lee, LLP, Malvern, PA, for J.G. Wentworth.

---

1. Wentworth's objection to the Debtor's claimed exemption was scheduled for a hearing on January 20, 2000. At that time, the objection was taken under advisement. As the Court sees it, the issue pertaining to both of Wentworth's objections is the same. Thus, both objections will be resolved in this order.

Insurance Company of America (hereinafter "GAIC").

In connection with the lawsuit, on April 13, 1995, the Debtor executed a "Release and Settlement Agreement" (hereinafter "Settlement Agreement"). Pursuant thereto, the Debtor dismissed the tort action in return for a lump sum payment and monthly payments of $1,400 for a period of thirty (30) years. (Settlement Agreement at ¶¶ 2, 13 and 14). In addition, the Debtor released his claims against the state court defendants. (Id. at ¶ 1). Paragraph seven of the Settlement Agreement provides that the Debtor, as the recipient of the monthly payments, cannot "sell, mortgage, encumber, or anticipate the future payments, or any part thereof, by assignment or otherwise." [2] (Id. at ¶ 7(f)).

On March 17, 1998, the Debtor and Wentworth executed a "Purchase Agreement." In exchange for $24,500 paid immediately, the Debtor transferred half of sixty (60) annuity payments to Wentworth.[3] The Debtor consummated the transaction with Wentworth, despite the language in paragraph 7(f) of the Settlement Agreement prohibiting him from selling or assigning his future rights to receive payments from CAC.

On its face, the Purchase Agreement memorializes a sales transaction.[4] As part of the deal, the Debtor promised to never claim ownership of the payments assigned to Wentworth. (Purchase Agreement at ¶ 5.a., p. 5). Moreover, the Debtor specifically (1) waived the restrictions on assignability contained in the Settlement Agreement and (2) agreed to refrain from later contesting the issue of whether the settlement payments were properly assigned to Wentworth. (Id. at ¶¶ 4.j., 4.o., 5.e., pp. 4–5).

From March 17, 1998 to October 1999, Wentworth received half of each of the Debtor's $1,400 monthly payments. On September 27, 1999, the Debtor filed a Chapter 13 bankruptcy petition. In his schedules, the Debtor identified the full monthly value of the annuity ($1,400) as an estate asset and claimed it as exempt property. Schedule J reflects the Debtor's monthly income. In calculating his monthly income, the Debtor included the full value of the annuity. Wentworth was listed as a secured creditor on Schedule D.

---

2. To fund the settlement, GAIC purchased an annuity from Commonwealth Life Insurance Company. GAIC then assigned the annuity to Capital Assignment Corporation (hereinafter "CAC"). For reasons not relevant to the instant dispute, the Settlement Agreement was set up as a structured settlement for tax purposes under §§ 104(a)(2) and 130 of the Internal Revenue Code. Such explains why three entities took part in the annuity purchase. For purposes of this discussion, it is only important that CAC was identified as the owner of the annuity. (Settlement Agreement at ¶ 6).

3. Half of one payment is $700. Sixty (60) payments of $700 totals $42,000.

4. Indeed, the drafter of the Purchase Agreement went to great lengths to stress the "sale" nature of the transaction. A few specific examples will demonstrate this point. Language such as "You desire to sell and assign to Us all of Your rights to receive all or a portion of the Payments under the Release" and "We desire to purchase all of Your rights and benefits" appears on page one. (Pur-

chase Agreement at p. 1). The agreement provides that "[t]he transaction described [herein] is intended to constitute a purchase and sale...." (Id. at ¶ 2, p. 2). The Debtor makes the following representation and warranty on page three: "You own (and are selling and assigning to Us under this Agreement) all of the Assigned Assets, free and clear of all claims, liens, charges, security interests, encumbrances, and agreements of any nature (other than this Agreement), and when You and We sign this Agreement, no one other than Us shall have any present or future right to the Assigned Assets." (Id. at ¶ 4.a., p. 3). Two more provisions in the Purchase Agreement are worthy of mention. First, the Debtor represented in paragraph four "that the transaction set forth in this Agreement is not a loan or other financing transaction." (Id. at ¶ 4.f., p. 3). Second, the Debtor represented the Wentworth transaction to be "a valid sale, transfer and assignment" of his rights in the annuity. (Id. at ¶ 4.g., p. 3).

Wentworth did not receive a payment in November 1999.[5] Nonpayment, along with the Debtor's treatment of the full value of the annuity as an estate asset, triggered Wentworth's two objections. Wentworth rejects the notion that the full value of the annuity is estate property. Wentworth also contends that it is not a creditor of this estate. Instead, Wentworth claims outright ownership of a portion of the annuity. The Chapter 13 Trustee shares Wentworth's view.

In response, the Debtor contends, *inter alia*, that the annuity payments are estate property, by virtue of the fact that he was contractually prohibited under the Settlement Agreement from transferring or assigning them. Furthermore, he points out that the Settlement Agreement names CAC as the owner of the annuity. According to the Debtor, Wentworth cannot claim ownership of an annuity owned by CAC.

### DISCUSSION

■■■ At issue here is whether that portion of the annuity assigned by the Debtor to Wentworth on March 17, 1998, is property of the bankruptcy estate. The Bankruptcy Code provides that the filing of a bankruptcy petition creates an estate comprising "all legal or equitable interests of the debtor in property as of the commencement of the case."[6] 11 U.S.C.

§ 541(a)(1) (1996). What constitutes estate property is said to be a question of federal law. *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1283 (11th Cir.1998) (citing *Southtrust Bank of Alabama v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir.1989), *cert. denied*, 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990)). However, property rights and interests are defined by state law principles. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Lewis*, 137 F.3d at 1283 (citations omitted). Accordingly, the Court must resort to state law to ascertain whether the Debtor had a legal or equitable interest in the annuity on the filing date, such that the monthly income derived therefrom must be considered and treated as estate property. This analysis requires a two-step process. The Court must first determine whether the Debtor validly assigned his interest in the annuity to Wentworth. Second, the Court will address the issue of ownership of the annuity payments.[7]

The Debtor directs the Court's attention to the Settlement Agreement, specifically the anti-assignment clause in paragraph 7(f).[8] According to the Debtor, he lacked authority to assign the monthly payments to Wentworth. Neither Wentworth nor

---

5. The Purchase Agreement required the Debtor to instruct CAC to send half of the monthly payments to Wentworth. (Purchase Agreement at ¶ 3.a., p. 2). Evidently, in either October or November 1999, the Debtor notified CAC to send the entire November payment of $1,400 directly to him.

6. In describing what constitutes estate property, it is noteworthy that Congress chose broad, all encompassing language. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ("Congress intended a broad range of property to be included in the estate").

7. The Settlement Agreement and the Purchase Agreement form the heart and soul of this litigation. Although the parties have not raised choice of law issues, it is important, for obvious reasons, that the Court apply the correct law in interpreting these agreements.

The Settlement Agreement does not contain a choice of law provision. Nevertheless, it was executed in Georgia, in connection with a lawsuit then pending in Georgia. Thus, it appears that Georgia law should apply to disputes involving the Settlement Agreement. In contrast, the Purchase Agreement specifically provides that it be construed according to the laws of the State of New Jersey. (Purchase Agreement at ¶ 16).

8. The Settlement Agreement is a contract governed by standard contract principles. *See Hopkins v. Hopkins*, 186 Ga.App. 530, 367 S.E.2d 825, 826–27 (1988). "The cardinal rule of construction is to determine the intention of the parties[.] But no construction is 'required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.'" *Id.* (internal citations omitted).

the Chapter 13 Trustee disputes the fact that paragraph 7(f) unequivocally prohibits the Debtor from selling or assigning the annuity's income stream. They do, however, oppose the Debtor's use of paragraph 7(f) to effectuate a rescission of the Purchase Agreement. For all intents and purposes, the Debtor ignored paragraph 7(f) by executing the Purchase Agreement (presumably because he deemed it to be in his best interest to do so). Now, almost two years later, and because he needs money to fund his Chapter 13 plan, the Debtor seeks to revive and attach meaning to the Settlement Agreement's anti-assignment provision. The Debtor's attempt to reverse the Wentworth transaction is both disingenuous and not supported by applicable law.

As a general proposition, contract rights and duties are assignable. *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 297 S.E.2d 222, 226 (1982) (citing RESTATEMENT (SECOND) OF CONTRACTS § 317 (1979)).[9] Notwithstanding the general rule, the Supreme Court of Georgia opined long ago that

> [c]ertain classes of contracts are inherently nonassignable in their character, such as promises to marry, or engagements for personal services, requiring skill, science, or peculiar qualifications. When rights arising out of contract are coupled with obligations to be performed by the contractor, and involve such a relation of personal confidence that it must have been intended that the rights should be exercised and the obligations performed by him alone, the contract, including both his rights and his obli-

gations, cannot be assigned without the consent of the other party to such contract.

*Cowart v. Singletary*, 140 Ga. 435, 79 S.E. 196, 201 (1913). That certain contractual rights and duties, such as those typically found in personal services contracts, cannot be assigned without the consent of the other party is a well-established rule of law. *Gold Kist, Inc. v. Wilson*, 227 Ga. App. 848, 490 S.E.2d 466, 470 (1997); *Decatur N. Assoc., Ltd. v. Builders Glass, Inc.*, 180 Ga.App. 862, 350 S.E.2d 795, 797–98 (1986). The Settlement Agreement at issue here does not fall into the category of a personal services contract.[10] Neither contracting party relied on the particular skills or abilities of the other party. The Debtor simply agreed to release his tort claims and to dismiss the state court action. GAIC, on the other hand, through CAC, merely contracted to make monthly payments to the Debtor until the year 2025.

As noted earlier, the rule of thumb is that contract rights and duties are assignable. *Dennard*, 297 S.E.2d at 226. The Court must consider whether the Settlement Agreement's anti-assignment provision renders the general rule inapplicable to this case. In the Court's opinion, Georgia law mandates application of the general rule. That opinion is predicated on the theory that "once a party to the contract performs its obligations thereunder so that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent[,] even if the contract contains a non-assign-

---

9. The Restatement provides that "[a] contractual right can be assigned unless the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him." RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(a) (1979).

10. The Court borrows the definition of a "personal services contract" from the Ohio Court of Appeals. A personal services contract is "one in which the offeree is vested with discretion in accomplishing the assigned tasks because his skills, knowledge, experience and expertise are unique to the area and could not be duplicated by others not similarly qualified." *Yellow Cab of Cleveland, Inc. v. Greater Cleveland Reg'l Transit Auth.*, 72 Ohio App.3d 558, 595 N.E.2d 508, 511 (1991).

ment clause." *Mail Concepts, Inc. v. Foote & Davies, Inc.*, 200 Ga.App. 778, 409 S.E.2d 567, 570 (1991) (Andrews, J., dissenting), *cert. denied*, September 6, 1991 (citation omitted).

An executory contract is defined in the Georgia Code as "one in which something remains to be done by one or more parties." GA.CODE ANN. § 13-1-2 (1996). With respect to the Debtor's contractual obligations, the Settlement Agreement is not executory.[11] Immediately upon executing the Settlement Agreement, the Debtor released his claims against the state court defendants and dismissed his lawsuit with prejudice. (Settlement Agreement at ¶¶ 1 and 14). As of the date of the Wentworth transaction, the Debtor had fully performed the duties required of him. *See Souther v. Safeco Life Ins. Co. and Safeco Assigned Benefits Serv. Co. (Matter of Cooper)*, 242 B.R. 767, 770–71 (Bankr.S.D.Ga.1999). As the Court understands Georgia law, the Debtor, having held up his end of the bargain with GAIC, had every right to partially assign his interest in the annuity to Wentworth, irrespective of the anti-assignment clause in the Settlement Agreement. *See Mail Concepts*, 409 S.E.2d at 570; *see also Cooper*, 242 B.R. at 770–71;[12] *Wonsey v. Life Ins. Co. of N. Am.*, 32 F.Supp.2d 939, 943 (E.D.Mich.1998) (noting that the "modern trend with respect to contractual prohibi-

tions on assignments is to interpret these clauses narrowly, as barring only the delegation of duties, and not necessarily as precluding the assignment of rights from assignor to assignee"); RESTATEMENT (SECOND) OF CONTRACTS § 322(1) (1979) ("Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition."). Consequently, the Court must reject the Debtor's argument that he lacked legal authority to assign his interest in the annuity.

■ The Court can proceed quickly through the second stage of the analysis. There is no question but that the Debtor effectuated a partial assignment of his interest in the annuity to Wentworth. The Debtor contends that the transfer conferred creditor status on Wentworth, rather than ownership status. The Purchase Agreement establishes the relationship between Wentworth and the Debtor.[13] The intent of the parties is abundantly clear, as the Purchase Agreement is replete with references to a sales transaction. It is the inescapable conclusion of the Court that the Debtor sold his interest in the annuity to Wentworth, as opposed to pledging it as collateral for a loan.[14] Wentworth owns that portion of the income stream which it purchased from the Debtor. As such, the payments due to Wentworth under the

11. The Court acknowledges that CAC's obligation under the Settlement Agreement extends to the year 2025.

12. In *Cooper*, the Chapter 7 Trustee sought permission to sell the debtor's interest in a settlement annuity. 242 B.R. at 769. As in the case sub judice, the settlement agreement prohibited the debtor from assigning her monthly payments. *Id.* at 769–70. The court ultimately concluded that the Chapter 7 Trustee could sell or assign the debtor's interest in the periodic payments. *Id.* at 771–72. The court reasoned that Georgia law permits an assignment, in spite of the anti-assignment language, if the settlement agreement is not an executory contract. *Id.* This Court agrees

with and adopts the conclusions reached in *Cooper*.

13. New Jersey law governs the Purchase Agreement. *See* Footnote 11, *supra*. In New Jersey, "[t]he fundamental rule of construction of contracts calls for the ascertainment of intent of the parties in light of the general purpose of the contract." *Loizeaux Builders Supply Co. v. Donald B. Ludwig Co.*, 144 N.J.Super. 556, 366 A.2d 721, 724 (1976).

14. That CAC is the technical owner of the annuity does not change the outcome. What the Debtor sold to Wentworth was his entitlement to a portion of the annuity's income stream.

Purchase Agreement are not property of the estate. *See Jones v. J.G. Wentworth S.S.C. Ltd. Partnership (In re Berghman),* 235 B.R. 683, 691 (Bankr.M.D.Fla.1999) (right to payments from an annuity obtained pursuant to a structured settlement agreement assigned by the debtor prior to filing not property of the estate); *In re Freeman,* 232 B.R. 497, 503 (Bankr. M.D.Fla.1999) (same).[15] It logically follows, then, that Wentworth is not a creditor of this estate.

## CONCLUSION

Having given this matter its careful consideration, the Court concludes that the Debtor had authority to transfer his interest in the annuity. Further, that portion of the annuity's income stream purchased by Wentworth from the Debtor is not property of this bankruptcy estate. Accordingly, the objections filed by Wentworth and the Chapter 13 Trustee to the Debtor's plan are hereby **SUSTAINED.** Wentworth's objection to the Debtor's claimed exemption in the full value of the annuity is likewise **SUSTAINED.**

**IT IS SO ORDERED.**

---

**15.** In virtually all respects, *Berghman* and *Freeman* are identical to the present case. Both cases involve debtors who were beneficiaries of structured settlement agreements. *Berghman,* 235 B.R. at 685; *Freeman,* 232 B.R. at 498. The debtors assigned their annuity payments to Wentworth. *Id.* at 686–87; *Id.* at 498–99. Both debtors argued that the annuities were not assignable under the settlement agreements. *Id.* at 689; *Id.* at 500. Judge Funk in *Berghman* and Judge Proctor in *Freeman* each concluded that the annuities were assignable and that the future income streams payable to Wentworth did not constitute estate property. *Id.* at 691; *Id.* at 502–03. This Court agrees with and adopts the reasoning of those two cases.