In re Roy A. PRICE and
Lavonda S. Price.

Structured Investments Co.,
LLC, Plaintiff,

v.

Roy A. Price, Defendant.

Bankruptcy No. 4:03–bk–13601M.
Adversary No. 4:03–ap–1258.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

July 22, 2004.

―――――――――

Laura Grimes, Knollmeyer Law Office, Jacksonville, AR, for Debtors.

Charles T. Coleman, Kimberly W. Tucker, Wright, Lindsey & Jennings, Little Rock, AR, for Plaintiff.

Michael J. Knollmeyer, Knollmeyer Law Office, Jacksonville, AR, for Defendant.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On March 25, 2003, the Debtors, Roy and Lavonda Price, filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code.

On August 28, 2003, Structured Investments Co., L.L.C. ("Structured") filed a complaint against Roy Price ("Price") to determine a debt owed to Structured to be nondischargeable under the provisions of subsections 523(a)(2)(A)-(B) and (a)(6) of the Bankruptcy Code. The complaint also seeks to impose a constructive trust. Price filed a timely answer denying the allegations of the complaint.

On March 10, 2004, Structure filed a motion for summary judgment accompanied by answers to requests for admission, pleadings, an affidavit, and a brief in support of the motion. The motion seeks summary judgment pursuant to Bankruptcy Code subsections 523(a)(4)(fraud by a fiduciary, embezzlement, larceny) and (a)(6) (willful and malicious injury) but not pursuant to subsection 523(a)(2) (debt arising from fraud).

Price filed a response opposing the motion for summary judgment, together with pleadings and an affidavit. The motion was set for hearing in Little Rock, Arkansas, on April 2, 2004, and at the parties' request, the matter was submitted to the Court for its consideration without oral argument.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (2000), and the Court has jurisdiction in this case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted only where it appears that there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056 (incorporating Fed.R.Civ.P. 56 in adversary proceedings) (directing the court to enter summary judgment if pleadings, affidavits and other papers on file show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law); *Fields v. Gander*, 734 F.2d 1313, 1314 (8th Cir.1984) (citing *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983)); *Schieffler v. Pulaski Bank & Trust Co. (In re Molitor)*, 183 B.R. 547, 549–550 (Bankr. E.D.Ark.1995) (citations omitted); *Toshiba America Inc. v. Video King of Ill., Inc. (In re Video King of Ill., Inc.)*, 100 B.R. 1008, 1012 (Bankr.N.D.Ill.1989) (citations omitted).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the party opposing the motion for summary judgment and must give that party the

benefit of all reasonable inferences drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987) (citing *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir.1985) (citing *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir.1980))). To be material, the fact in dispute must affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party opposing a motion for summary judgment may not rely upon the mere allegations of its pleadings but must instead set forth, by affidavit or otherwise, specific facts showing that a genuine issue exists for trial. Fed.R.Civ.P. 7056 (incorporating Fed.R.Civ.P. 56(e) in adversary proceedings); *Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1402–03 (8th Cir.1986) (citing Fed.R.Civ.P. 56(e); *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984); *Bouta v. Am. Fed'n of State, County & Mun. Employees*, 746 F.2d 453, 454 (8th Cir.1984)); *Harrison Properties Ltd. v. Spears (In re Swaffar)*, 222 B.R. 330, 332 (Bankr.E.D.Ark.1998) (citations omitted).

## II.

### FACTS

Price served 22 years of active duty as an enlisted man in the Air Force and is now retired. He is entitled to a monthly United States military pension of $1140.00, although the record is silent as to whether any income tax is withheld by the government. On April 1, 2002, Price entered into an agreement with Structured called an "Annuity Utilization Agreement." (Aff. of Steven P. Covey, hereinafter "Covey Aff.," March 10, 2004.) Pursuant to the agreement, Structured paid to Price the cash sum of $20,365.00 on a date not shown in the record.

In consideration for the payment of $20,365.00, Price directed the government to directly deposit his military pension payments of $1140.00 a month to Price's deposit account. Structured then withdrew that amount via direct deposit to Structured's account at Provident Bank. These monthly payments began April 1, 2002, and were to continue for a period of 96 months as provided in the agreement. After each payment to Structured's account, Structured was to withdraw $555.00 and remit the balance, less a management fee of $28.00, via a direct deposit to Price's personal bank account.

Price performed as agreed until March 2003 when he directed the government to cease making the payments to the deposit account and caused the payments to be made directly to his personal account. He apparently made no further payments to Structured under the contract and filed for relief under the provisions of Chapter 7 on March 25, 2003.

The annuity utilization agreement is lengthy, and the pertinent provisions may be summarized. The agreement recites that it is "a program ... through which persons who are entitled to receive periodic payments over a period of time can receive a lump sum payment in exchange for their agreement to remit a specified number of periodic payments to [Structured] immediately upon receipt thereon." (Covey Aff., Ex. 1 at 2.) The contract specifically states that it is not a loan.

The payment of $555.00 and the $28.00 management fee are to be made each month for 96 months commencing April 1, 2002, and if there is any "disruption, interruption or decrease in those payments *caused by the participant*, the number of payments due ... is automatically ... increased to 120 and the last pay date is ...

extended to ... 03/1/2012." (Covey Aff., Ex. 1 at 3.)[1]

As part of the agreement, a collateral assignment of life insurance of not less than $40,000.00 is required. In the event of Price's death, the policy purchased will pay Structured the balance owed under the agreement, which is calculated by multiplying the stated monthly payment by the number of months remaining under the contract. This is apparently the only scenario under which the agreement may be terminated earlier than 96 months. The agreement requires an automatic debit of $49.00 from Price's account as payment for insurance premiums.

Any reduction of the anticipated payments to Structured constitutes a breach that causes all of the remaining and outstanding payments to be immediately due and payable. The contract also provides that Price is to grant to Structured "a perfected, first priority security interest in the Deposit Account...." (Covey Aff., Ex. 1 at 6.) The participant agrees that he has not otherwise disposed of his right to receive payments and that any violation of this covenant will result in the perpetration of a fraud on Structured. The contract also provides that the obligation under the agreement and the security interest granted will be excluded from the participant's bankruptcy estate should the participant file bankruptcy.

The contract requires the participant to acknowledge that an intentional violation of his obligations under the agreement "could, under certain circumstances, constitute criminal conduct, punishable by criminal fines or imprisonment." (Covey Aff., Ex. 1 at 11.)

The agreement contained the following paragraph regarding federal pensions:

[Structured] and participant acknowledge and agree that under applicable federal law, participant may not (a) assign the underlying benefits with respect to which the periodic payments are being made to another person; (b) alienate such benefits in any way, or (c) sell transfer, pledge or otherwise use such benefits to obtain credit in any form. Participant and [Structured] have structured the transactions contemplated by this agreement in a manner which they believe does not, and which they do not intend to, constitute an assignment, sale, transfer, pledge or other alienation of participant's benefits or to otherwise cause participant to violate any provision of law relating to such benefits. As an inducement to [Structured] to enter into this transaction at participant's request and for participant's benefit, participant hereby covenants and agrees not to raise as a defense to any lawsuit brought by [Structured] to enforce its rights hereunder or under any related agreement any argument that this agreement is void, voidable or otherwise unenforceable in whole or in part under any theory. This agreement not to assert any such defense is intended to be a separately negotiated agreement intended to ensure that [Structured] will not be required to expend time and money in litigating novel and complex issues of law and fact.

(Covey Aff., Ex. 1 at 12.)

The agreement also states that California law governs any dispute and that the participant agrees to venue in Orange County, California, to hear any dispute,

---

1. If Price performed under the terms of contract for 96 months, he would pay Structured a total of $55,968.00 ($555.00 + $28.00 = $583.00 × 96 months = $55,968.00). If he defaulted, he would pay a total of $69,960.00 ($555.00 + $28.00 = $583.00 × 120 months = $69,960.00).

provided, however, that Structured has the right to bring suit in any other jurisdiction of its choosing and the participant waives any objection to lack of personal jurisdiction, improper venue, or forum non conveniens.

## III.

## DISCUSSION

Structured argues in its brief in support of summary judgment that the agreement is neither a loan nor an unenforceable assignment of Price's military pension, but rather a valid sale of the pension payments after they are received by Price. It is Structured's position that Price has waived his right to claim the agreement is invalid and that payments received by him from the government are held by him in constructive trust for the benefit of Structured. Alternatively, Structured states that Price's action rises to the level of theft and embezzlement or that Price's conduct was a conversion amounting to a willful and malicious injury.

Structured asserts that the Debtor's refusal to continue paying his pension payments to Structured is grounds to have the debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6). These sections provide:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(4) & (6)(2000).

Both sections refer to a debtor's conduct in dealing with a creditor's interest in property. Unless Structured owned an interest in Price's pension rights, whether as collateral or through an outright sale, there can be no violation under these provisions of section 523.

Price argues that under applicable federal law, the purported assignment is void; that the substance of the transaction was a loan, that Price has not waived his rights to raise the illegality of the contract, and finally that since Structured had no rights in the retirement pay, no conversion or defalcation occurred.

The initial legal question to be determined is what is the true nature of the Annuity Utilization Agreement. The agreement specifically states that the transaction is not a loan. Structured further argues that it is not a prohibited sale or assignment of Price's military pension but rather a valid sale of a stream of income in the form of payments sold as they are received by Price in the future.

■ However, a sale of Price's future pension rights is specifically prohibited by federal law. The United States Code unambiguously provides that

(a) Under regulations prescribed by the Secretary of the military department concerned, a commissioned officer of the Army, Navy, Air Force or Marine Corps may transfer or assign his pay account, when due and payable.

. . .

(c) An enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void.

37 U.S.C. § 701 (2000).

The rationale for this statute was explained by the Fourth Circuit in the case of *Dorfman v. Moorhous,* in which the court held that an assignment similar to

the one in the present case was unenforceable:

> Turning first to the construction of the words "due and payable," we agree with the Fifth Circuit and the bankruptcy court that "no serviceman may assign his pay in advance of the date it becomes due and payable." *United States v. Smith,* 393 F.2d at 321. The limitation is but a corollary of general legal principles governing the pay of public officials:
>
>> [I]t is a well settled general rule that an assignment by a public officer of the unearned salary, wages, or fees of his office is void as against public policy ... In accordance with the general rule, and also in view of statutes and regulations forbidding an officer to assign his pay account before due, an army or navy officer cannot assign his unearned pay, including the unearned half pay of a retired officer.
>
> 6A C.J.S. *Assignments* § 26 (1975) at 623–25 (citing cases). The public policy justification arises from the concern that unforeseen financial embarrassments, following the assignment of an officer's future pay, may prevent the officer from rendering the services for which he has been retained. 6A C.J.S. *Assignments* § 26 (1975) at 624; *Swenk v. Wyckoff,* 46 N.J.Eq. 560, 20 A. 259, 260 (N.J.Err. & App.1890) (officer may not assign unearned retired pay). The restriction is of long standing in English jurisprudence, *Swenk,* 20 A. at 260, and with respect to American forces, has existed since at least 1835, at which time Army Regulations stated "[o]fficers shall not pass away or transfer their pay-accounts for any amount not actually due at the time." Army Regulations of 1835, Reg. 11 Art. XLVIII (*quoted in* 15 Op. Att'y. Gen. 271, 273 (1877)).

*Dorfman v. Moorhous (In re Moorhous),* 108 F.3d 51, 55–56 (4th Cir.1997).

Although the court's explanation of the policy behind 37 U.S.C. § 701 refers only to officers, it is reasonable to assume the same rationale applies to the anti-assignment prohibition regarding the pay of enlisted men.

The *Moorhous* opinion affirms a ruling by the bankruptcy court, which noted an "absolute prohibition on assignments of pay by enlisted personnel" as compared with a permitted assignment of officer's pay if allowed by regulation and due and payable. *Dorfman v. Moorhous (In re Moorhous),* 180 B.R. 138, 150 (Bankr. E.D.Va.1995). See also *United States v. Smith,* 393 F.2d 318, 321 (5th Cir.1968)(no serviceman may assign his pay in advance of the date it is becoming due) (citing 37 U.S.C. § 701(a) & (c)); *Swenk v. Wyckoff,* 46 N.J. Eq. 560, 20 A. 259, 260–61 (N.J. 1890) (assignment of officer's unearned retired pay is void as against public policy).

In support of its case, Structured cites *Structured Investments Co. v. Smith (In re Smith),* 302 B.R. 530 (Bankr.N.D.Miss. 2003); *In re Terry,* 245 B.R. 422 (Bankr. N.D.Ga.2000) and *Jones v. Wentworth S.S.C. Ltd. Partnership (In re Berghman),* 235 B.R. 683 (Bankr.M.D.Fla.1999); and an unpublished opinion, *In re Heald,* No. 03–03127–8–JRL (Bankr.E.D.N.C. August 8, 2003).

All of the cases cited by Structured are distinguishable. *Smith, Terry,* and *Berghman* each involved civilian pension or annuity payments not subject to the assignment prohibition of 37 U.S.C. § 701(c). The unreported case of *Heald* is also distinguishable. It involved a veteran disability benefit governed by a different statute, and the case concerned the issues of regular income and bad faith filing in a Chapter 13 case and not the dischargeability of the debtor's obligations. The case makes

the point that the statute at issue was designed to protect the government and could not serve as a means for a recipient-assignor to avoid his obligation to an assignee. That policy, however, differs from the policy underlying 37 U.S.C. § 701.

Structured argues in its brief that "the 'plain intent' of each of the parties was that the Debtor acted to sell or assign his interest in the future monthly payments" and that "[T]he Debtor was clearly aware that he had sold the payments, but nonetheless converted the payment to his own use." (Brief in Support of Motion for Summary Judgment at 13–15.) However, the agreement states the exact opposite of Structured's own argument because it provides that the parties do not intend that the transactions "constitute an assignment, sale, transfer, pledge or other alienation of participant's benefits...." (Aff. of Stephen Covey, Ex. 1 at 12.) In other words, the agreement itself disavows any and all characterization by stating that it is not a loan, not an assignment, and not a sale.[2]

## IV.

## WAIVER OF DEFENSE OF ILLEGALITY

■ Structured argues that Price waived his right to claim that the assignment was invalid under 37 U.S.C. § 701. The agreement does provide that the participant will not defend against any lawsuit brought by Structured to enforce its rights under the agreement by basing the partici-

pant's defense on the argument that the agreement is void, voidable or otherwise unenforceable in whole or in part "under any theory." (Covey Aff., Ex. 1 at 12.) (See page 808 supra.)

However, this provision is not a bar to Price's defense in this action for two reasons. The provision does not specifically state that Price is prohibited from raising the issue of illegality as a defense to a complaint to determine Price's obligation nondischargeable in a bankruptcy case. The paragraph only applies to "any lawsuit brought by [Structured] to enforce its rights hereunder." (Covey Aff., Ex. 1 at 12.) Price is not objecting to Structured's claim but instead is defending a nondischargeability action under 11 U.S.C. § 523.

Second, this provision of the agreement is subject to the defense of unconscionability because the agreement strips Price of all remedies of every kind against Structured concerning Price's obligation and even includes an agreement to violate the provisions of 37 U.S.C. § 701(c).[3] The Uniform Commercial Code provides that courts finding contracts unconscionable may refuse to enforce the contract. Ark. Code Ann. § 4–2–302(1) (Michie 2001). Contracts that have stripped parties of their legal or equitable remedies have been held unconscionable under the UCC. *See Bank of Ind. v. Holyfield,* 476 F.Supp. 104, 110 (S.D.Miss.1979) (a contract which excluded some of parties' remedies for

---

2. Based on the record before the Court and despite the fact that the agreement claims it is a sale, the agreement appears to be a loan transaction secured by an assignment of Price's pension benefits.

3. In fact, the entire agreement is subject to the defense of unconscionability. According to the Court's calculation based on this record, if Price paid under the terms of the agreement, the payments compute to a robust interest rate of 29.53%. If Price is late on any

payment, the repayment term is extended to 120 months, which raises the interest rate to 31.02%. If Price died after 24 months, the interest rate calculates to 58.95%. A finding of unconscionability can result when interest rates are unreasonably high. *See Carboni v. Arrospide,* 2 Cal.App.4th 76, 2 Cal.Rptr.2d 845, 849 (1991) (finding interest rate of 200% per annum was unconscionable because it imposed overly harsh cost on the buyer).

812

breach was substantively unconscionable); *Esquire Mobile Homes v. Arrendale,* 182 Ga.App. 528, 356 S.E.2d 250, 253 (1987) (contract unconscionable where buyer had no remedies except against the defunct manufacturer); *Jefferson Cred. Corp. v. Marcano,* 60 Misc.2d 138, 302 N.Y.S.2d 390, 394 (N.Y.City Civ.Ct.1969) (lack of equality of bargaining power between the parties and unknowing waiver of warranties rendered contract unconscionable).

■ California law, which Structured urges the Court to apply in this case, incorporates the UCC's unconscionability provision into the state's civil code and makes it applicable to all contracts rather than restricting it to transactions involving a sale of goods. *See* Cal. Civ.Code § 1670.5 (West 2004)(adopting UCC section 2–302 and making it generally applicable to all contracts). The issue of unconscionability may be raised by the court sua sponte. 1 James J. White & Robert S. Sommers, Uniform Commercial Code § 4–3 (4th ed.1995).

■ The issue of unconscionability is a mixed question of law and fact and must be resolved at a trial on the merits. *Associated Press v. S. Ark. Radio Co.,* 34 Ark. App. 211, 214, 809 S.W.2d 695, 697 (1991) (citing Restatement (Second) of Contracts § 208 cmt. f).

Therefore, for the reasons stated herein the motion for summary judgment is denied. Trial on the merits will be set by subsequent notice.

IT IS SO ORDERED.